**Louis BENOIT, Respondent,**

v.

**COMMISSIONER OF REVENUE, Relator.**

No. C7–89–69.

Supreme Court of Minnesota.

March 30, 1990.

Hubert H. Humphrey, III, Atty. Gen. and Barry R. Greller, Sp. Asst. Atty. Gen., Tax Litigation Div., St. Paul, for relator.

J. Patrick Brinkman, Salmen, Brinkman & Martinson, P.A., St. Paul, for respondent.

WAHL, Justice.

The Minnesota Commissioner of Revenue appeals a Minnesota Tax Court judgment for respondent Louis Benoit. The tax court held that due to the assertion of financial control over Benoit, Inc., by a secured creditor, respondent, the sole shareholder and director of Benoit, Inc., was not an "employer" within the meaning of Minn.Stat. § 290.92, subd. 1(4) (1988), or a "person" within the meaning of Minn. Stat. § 297A.01, subd. 2 (1988), such that he could be personally liable to the state for unpaid withholding and sales taxes owing by the corporation. We reverse.

In March 1986, the Commissioner of Revenue (commissioner) issued an order assessing personal liability against respondent pursuant to Minn.Stat. § 270.10, subd. 4 (1986)[1], for unpaid sales tax (Minn.Stat. § 297A.01, subd. 2) and unpaid withholding tax (Minn.Stat. § 290.92, subd. 1(4)) for taxes payable from January 1984 through September 1984 in the amount of $19,030.56. Respondent filed a protest, which the com-

---

1. Minnesota Statutes § 270.10, subd. 4 (1986), provided:

    The commissioner may, based upon information available to the commissioner and within the prescribed period of limitations for assessing the underlying tax, assess personal liability against any officer, director, or employee of a corporation, or a member or employee of a partnership, who as an officer, director, employee, or member, falls within the personal liability provisions of section 290.92, chapter * * * 297A, for taxes arising thereunder which are due and owing by that corporation or partnership.

    Subdivision 4 was amended in 1987. Act of May 28, 1987, ch. 268, art. 14, § 11, 1987 Minn. Laws 1359.

missioner denied, then an appeal with the Minnesota Tax Court.

The sole issue for trial before the tax court was whether, due to the assertion of financial control by a secured creditor, respondent was in legal control of Benoit, Inc. for purposes of the personal liability provisions of sections 290.92, subd. 1(4), and 297A.01, subd. 2. The tax court, in its findings of fact, conclusions of law and order for judgment, determined that the secured creditor, Maryland National Industrial Finance Corporation, not respondent, had custody and control of the assets of Benoit, Inc. during 1984, the period at issue here. The tax court concluded, therefore, that respondent was not personally responsible for the remaining unpaid sales and withholding taxes for 1984 and reversed the order of the commissioner. We granted the commissioner's petition for writ of certiorari.

Respondent was the founder, president and sole shareholder of Benoit, Inc., a successful construction supply company which operated on a national basis. From 1970 until 1982, Benoit, Inc., relied exclusively upon Midway National Bank (Midway) for financing. In 1982, however, Benoit, Inc. and its subsidiary companies were expanding so rapidly that Midway could no longer meet their financing needs.

On June 24, 1982, Executive Vice President John Knost, acting for Benoit, Inc., entered into an Accounts Receivable, Inventory and Equipment Loan and Security Agreement with the Illinois office of Maryland National Industrial Finance Corporation (Maryland). The loan was secured by Benoit, Inc.'s assets, with respondent to be personally liable in the event of a default on the agreement.

Section 4.14 of the security agreement provided, in part,

> Until the borrower's authority to do so is terminated by the Lender * * * the Borrower will, at the Borrower's sole cost and expense, but on the Lender's behalf and for the Lender's account, collect as the Lender's property and in trust for the Lender all amounts unpaid on Receivables, and shall not commingle such collections with the Borrower's funds or use the same except to pay the Obligations. The Borrower shall deliver to the Lender in original form and on the date of receipt thereof, all checks, drafts, notes, money orders, acceptances, cash and other evidences of indebtedness.

From the date of the security agreement until approximately the fall of 1983, Benoit, Inc. borrowed money from Maryland. In September of 1983, at the end of Benoit's fiscal year, the auditing team of Ernst & Whinney discovered irregularities in the books of Benoit. Specifically, they discovered that Knost would keep the month's books open until he had the money to cover the bills for the same month. Since Maryland was advancing sums to Benoit, Inc. on the basis of the monthly books, Maryland deemed itself insecure, and threatened to declare a default on the security agreement.

In December 1983, Maryland invoked section 4.14 of the security agreement and instituted new lending procedures. Benoit, Inc. was required to deposit all accounts receivable checks into a newly created trust bank account. The bank account was at Midway in Maryland's name, as assignee for Benoit, Inc., with Maryland the only authorized signatory on the account. All of Benoit's checks for accounts receivable were deposited into the trust account. Benoit, Inc. could not deposit funds in any account other than Maryland's trust account.

After the funds were deposited into Maryland's trust account, Midway transferred the funds to Maryland's Chicago Office. When Benoit, Inc. needed money to pay bills, or make payroll, Knost and Tom Okoneski, collection and credit specialist, drew up a list of bills to be paid. Okoneski telephoned Maryland officials and requested money to pay the bills on the list. After the list was submitted to Maryland, Maryland officials reviewed the list of creditors and decided which creditors they would advance funds to pay. Maryland then called Okoneski and told him which bills they had authorized. After Maryland authorized the payments for Benoit's creditors, Maryland

transferred from their account in Chicago to Benoit's general operating account at Midway, an amount of money sufficient to cover the approved checks. Okoneski then gave the list of names of the approved payees to the accounting staff at Benoit, Inc. who generated the checks. These checks were then forwarded to Benoit's creditors, and, after being deposited by Benoit's creditors, would make their way back to Midway. Midway, pursuant to an agreement with Maryland, held the checks until they could verify with Maryland officials that Maryland had given approval for payment to those specific creditors. If approval for payment had not been given, the checks were returned marked NSF. If Benoit attempted to pay a creditor not on the list, Midway would not honor the check.

In December 1983, during the time the new trust account arrangements were implemented, respondent was informed by Maryland that his only responsibilities with respect to the management of the company were to work on collecting and reducing the accounts receivable. A few months later, on March 4, 1984, Benoit, Inc. filed a Chapter 11 bankruptcy. The bankruptcy court ordered the parties to continue the trust account and method of paying Benoit's creditors. Maryland then directed respondent to begin selling off the assets of Benoit, Inc. in addition to continuing to collect outstanding accounts receivable.

From December 1983 through August 1984, respondent continued to draw his salary and retained the authority to sign the corporate checks and hire and terminate employees. However, no employees were hired from December 1983 until August 1984 and respondent laid off employees only when told by Maryland that they would not supply the funds to pay those employees. Respondent also had authority on behalf of the company to enter into contracts which had been approved by Maryland in advance.

Respondent continued to prepare and sign the corporation's tax returns from December 1983 through August 1984. Respondent repeatedly asked Maryland to advance funds to pay the sales and withholding taxes, but Maryland refused. During this period of time, Benoit, Inc. had no source of funds other than those advanced by Maryland to Benoit's general operating account at Midway. Maryland advised respondent that if he or Okoneski attempted to pay the taxes without Maryland's authorization, Midway would send the check back NSF after verifying with Maryland that the company had no authority to pay the taxes. Moreover, Maryland threatened that if respondent attempted to pay the taxes without authorization, Maryland would declare the company in default on the security agreement and fire respondent. Respondent was personally liable under the security agreement in the event of a default.

The tax court reviewed the foregoing procedures and determined that because of the trust account arrangement, Maryland, not respondent, was in control of the assets of Benoit, Inc. during 1984. The tax court concluded that respondent was not personally liable for the unpaid taxes. In reviewing the findings of fact made by the tax court, this court ascertains whether there was "sufficient evidence to support the tax court's decision." *Nagaraja v. Commissioner of Revenue*, 352 N.W.2d 373, 376 (Minn.1984). Conclusions of law, however, are freely reviewable. *Id.*

The commissioner reminds us at the outset of our deliberation that the withholding and sales taxes at issue in this case were collected by Benoit, Inc. a corporation, from third parties[2] under an obligation that the taxes be held in trust for and paid over to the state of Minnesota, i.e. trust fund taxes. The corporation's duties as a tax collector of trust fund taxes on behalf of the taxing authority being fiduciary in nature, the Minnesota legislature, as well as the United States Congress, has provided for enforcement of that corporate fiduci-

---

2. The sales taxes were collected by the corporation for the state from customers of Benoit, Inc. The withholding taxes were withheld for the state from the wages of the corporation's employees, all of whom received a credit against their tax liability for the amount of tax withheld, though the state has never received the taxes. Minn.Stat. § 290.92, subd. 12 (1988).

ary duty by imposing personal liability on corporation officials responsible for collection and payment of the tax who fail in their duty. Minn.Stat. § 270.10, subd. 4; 26 U.S.C. § 6672 (1982). One of the reasons identified by legal scholars for breakdowns in the payroll tax collection process which led to this legislation has been that "many highly leveraged businesses are at the mercy of lenders who, under the terms of their financing agreements, have reserved the right to collect and manage those businesses' accounts receivable and other cash inflows" Makel & Chadwick, *Lender Liability for a Borrower's Unpaid Payroll Taxes*, 43 Bus. Law 507, 508 (1988) (hereinafter Makel and Chadwick). Employers in this position are forced to find other sources of funds from which to pay these trust fund taxes but, like respondent, rarely have such sources at their disposal. *Id.*

Minnesota Statutes § 270.10, subdivision 4, authorizes the commissioner to assess personal liability against "any officer * * * of a corporation" who, as an officer, falls within the personal liability provisions of, among others, section 290.92 for unpaid withholding taxes owing by the corporation and chapter 297A for unpaid sales taxes owing by the corporation. Section 290.92, subd. 1(4), sets forth the standard for officer liability for withholding taxes by defining those persons who are "employer[s]" responsible for paying withholding taxes.

> '[E]mployer' means any person, including * * * corporations transacting business in or deriving any income from sources within the state of Minnesota for whom an individual performs or performed any services, of whatever nature, as the employee of such person, except that if the person for whom the individual performs or performed the service does not have legal control of the payment of the wages for such services, the term 'employer' * * * means the person having legal control of the payment of such

wages. *As used in the preceding sentence, the term 'employer' includes * * * officers of corporations who have legal control, either individually or jointly with another or others, of the payment of wages.*

(Emphasis added). Section 297A.01, subd. 2, sets forth the standard for officer liability for sales taxes by defining the "person" responsible for paying sales taxes.

> 'Person' includes any individual, partner, officer, director, firm, partnership * * * or private corporation * * *. [T]he term 'person' includes, but is not limited to, directors and officers of corporations * * * who, either individually or jointly with others, *have the control, supervision or responsibility of filing returns and making payment* of the amount of tax imposed by this chapter.

(Emphasis added).

Under § 290.92, subd. 1(4), an employer, including an officer of a corporation, will be liable for unpaid withholding taxes if the employer is someone for whom an individual performs services and that employer has legal control of the payment of wages. It is clear that in some instances the person for whom the individual performs the services may not be the "employer" having legal control of the payment of wages who will be personally liable. The focus of the statute is unambiguously on the person or persons who have legal control of the payment of wages. The question then, with regard to withholding taxes, is whether respondent had legal control of the payment of wages during the period of time the taxes were delinquent.[3] The issue turns, not on the facts, which are undisputed, but on the meaning of "legal control."

■ Respondent argues, and the tax court was persuaded, that because Benoit, Inc.'s lender, Maryland, had assumed financial control of the corporation, under section 4.14 of the financing agreement, respondent was no longer in legal control of

---

**3.** Even if respondent were in legal control of the payment of wages, Maryland as a third party providing funds to the employer for the payment of wages might also be liable for the amount of the taxes if Maryland knew the em-

ployer would not be able to make timely payment of the taxes, Minn.Stat. § 290.92, subd. 22(b) (1988). However, that question is not before us.

the payment of wages and therefore was relieved of personal liability for unpaid withholding taxes under the statute. The commissioner, on the other hand, looks to the statute regarding personal liability of corporate officers for withholding taxes and argues that this statute focuses on legal control and not on financial control which may be exercised by their creditors.

The commissioner points to the following relevant evidence that respondent was in legal control of the business and of the payment of wages. Respondent was the chief executive officer, sole director and sole shareholder of Benoit, Inc. for the relevant tax periods and the only remaining signatory (other than a bookkeeper) on the corporate checking account for most of that time. Respondent exercised the authority to enter into contracts on behalf of the corporation; retained authority to hire and discharge employees; conducted or supervised the corporation's liquidation activities which resulted in sales tax liability; and signed or supervised the signing of all the tax returns, including withholding tax returns which encompassed withholding on his own salary. Respondent also personally filed a voluntary petition to place Benoit, Inc. in chapter 11 bankruptcy proceedings, holding himself out to the bankruptcy court and Benoit, Inc. creditors as the person in control of the corporation three months after he contended Maryland had taken over that control. On June 12, 1984, in a sworn affidavit to the bankruptcy court, he asserted that Benoit, Inc. was in possession and control of its property with no indication that Maryland was in control of the corporation and was failing to provide the corporation funds to pay its withholding and sales taxes. The employees from whose wages taxes were withheld were employees of Benoit, Inc., respondent's business. Although Maryland advanced monies for the payment of wages of those employees, respondent controlled the amount of the wages and issued checks for the payment of those wages out of Benoit, Inc.'s corporate checking account. Thus, it

would appear, looking at the language of the statute and the evidence submitted, that respondent was indeed in legal control of the payment of wages and an employer personally liable for withholding taxes owed by the corporation.

The tax court and the parties, however, also looked to federal law to interpret sections 290.92, subd. 1(4), and 297A.01, subd. 2, because this court has never addressed the potential liability of corporate officers under the withholding and sales tax statutes. While federal law imposes a stricter standard of personal liability with regard to payment of withholding taxes,[4] it is helpful in defining those cases under Minnesota law where officers would be deemed liable under Minnesota's "legal control" standard of liability. The definition of employer in Minn.Stat. § 290.92, subd. 1(4), is nearly identical to that in the Internal Revenue Code (IRC). The IRC defines "employer" as

> the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—
>
> > (1) if the person for whom the individual performs or performed the service does not have the control of the payment of wages for such services, the term 'employer' * * * means the person having control of the payment of such wages * * *.

26 U.S.C. § 3401(d) (1982).

The IRC imposes an even broader liability than does Minnesota for unpaid withholding taxes. Section 26 U.S.C. § 6672(a), provides that

> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax * * * shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax * * * not collected * * *.

---

**4.** The liability in the IRC is called the 100% penalty, and is equal to the sum of the unpaid withholding taxes owed. 26 U.S.C. §§ 6671–

6672. The penalty applies to those "persons" under a "duty" to withhold taxes who "willfully" fail to pay the taxes.

"Person" for the liability provided above, is defined as "an officer or employee of a corporation * * * who as such officer * * * is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C.A. § 6671(b).

The federal courts have developed a substantial body of case law regarding "officer liability", which imposes personal liability on a corporate officer for unpaid withholding taxes when the officer is a "responsible person" who willfully fails to pay over the taxes. *See, e.g., Matter of Smith*, 68 B.R. 105, 109 (Bankr.W.D.Mo.1986); *United States v. Davidson*, 558 F.Supp. 1048, 1051 (W.D.Mich.1983). The test for responsible person status is a functional one which focuses on those persons who have the power and responsibility to see that the taxes are paid. *Taubman v. United States*, 499 F.Supp. 1133, 1137 (E.D.Mich. 1978) (holding corporate officers liable), *aff'd sub nom. United States v. Intercontinental Indus., Inc.*, 635 F.2d 1215 (6th Cir.1980). Control and influence over the "disbursement of funds and priority of payments to creditors" are the most important elements. *Id.*

Respondent primarily relied on *Maggy v. United States*, 560 F.2d 1372 (9th Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978); *Platt v. United States*, 519 F.Supp. 203 (N.D.Ill.1981); and *In re Brandt–Airflex Corp.*, 69 B.R. 701 (Bankr. E.D.N.Y.1987).[5] The tax court found *Maggy* most persuasive. Maggy, who owned 40% of the stock of Edmap Industries, Inc., was elected president, director and chairman of the board of that corporation on April 6, 1967. On June 22, 1967, under threat of a total strike by all Edmap executives and employees, Maggy agreed to an internal reorganization, turned his stock over to a voting trust and resigned as president of Edmap though he remained chairman of the board and, unknowingly, remained an authorized signator on Edmap bank accounts. A financial committee created by the voting trust made daily financial decisions. From June 22, 1967, when Maggy resigned as Edmap's president, until August 2, 1967, when he was reelected president, Edmap paid no withholding taxes though there were adequate funds in the Edmap account when Maggy resigned as president to pay the withholding taxes which had accrued by that date. Maggy was assessed for the full amount of taxes due on July 31, 1967, for the preceding quarter. The district court found that at all times relevant to the case, "Maggy was aware that the taxes were being withheld from the employees' wages; was aware that these amounts were due to the United States; was a responsible person within the ambit of section 6672 with the power to pay those taxes; and had made no attempt to pay the taxes due on July 31 for the preceding quarter." *Id.* at 1374. The Second Circuit Court of Appeals held that Maggy was not a responsible person for the entire relevant quarter, having been stripped of all relevant authority over Edmap at the June 22 meeting, and that his liability for the withheld quarterly taxes in issue would extend only from May 1 to June 22.

*Maggy* is distinguishable from the case before us. Maggy was ousted as president and from his position of control. Respondent neither resigned as president nor threatened to resign and at all times remained in legal control of Benoit, Inc. The tax court, in denying the commissioner's motion for additional and amended findings and conclusions of law, was "not convinced that naked legal control is sufficient." Such a conclusion is for the legislature to make and the legislature has clearly stated that the person or persons having legal control of the payment of wages is the employer personally liable for nonpayment of withholding taxes. *See* Minn.Stat. § 290.92, subd. 1(4).

The case of *Platt v. United States*, relied on by respondent, is also distinguishable. In *Platt*, legal control of the corporation's business was formally transferred to the corporation's creditor by a written management agreement which gave the creditor

---

**5.** *In re Brandt–Airflex Corp.*, 69 B.R. 701 (Bankr. E.D.N.Y.1987) is no longer good law, having been overruled by the federal district court, *Id.*, 78 B.R. 10 (E.D.N.Y.1987), in a decision affirmed by the second circuit, 843 F.2d 90 (1988).

"complete control of and management responsibility for [the corporation's business], including complete control over [its] bank accounts, business records, and responsibility for supervision of sales and payment of salaries, commissions and business expenses." 519 F.Supp. at 205. The *Platt* court held that the officers were not liable for the tax periods when they had formally transferred away complete control of the corporation and others had stepped in to assume those duties, but were liable for periods when they had resumed their duties even though the management agreement was not formally rescinded. 519 F.Supp. at 209–10. Respondent Benoit never transferred management of the corporation to Maryland but at all times remained in legal control of Benoit, Inc. and of the issuance of checks on its bank account.

We acknowledge, as do commentators such as Makel and Chadwick, that "if an employer has no funds and a [creditor] provides a loan to the employer, the proceeds of which may be used exclusively to pay net wages of the employees, the responsible person has a strong argument that he or she was powerless to make any decision regarding the use of the funds." Makel at 517. Most federal courts, however, have been unsympathetic to such an argument. *Davidson*, 558 F.Supp. at 1054, sets out the general rule that a person is not absolved from responsibility for the employee's payroll tax even where the employee's creditors have threatened to shut down the employer's business unless they receive payment. The Second Circuit Court of Appeals in *Kalb v. United States*, 505 F.2d 506 (2d Cir.1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975), rejected the employer's argument that his conduct was not willful because a bank threatened to withdraw its line of credit unless it was permitted to control the employer's disbursements. Appellants in *Kalb* alleged, as the tax court found in respondent's case, that they always included taxes in the list of debts forwarded to the bank for approval of payment, but that the bank refused to approve payment. Noting that the appellants voluntarily entered into and at all times acceded to the

arrangement, the *Kalb* court laid down the law:

> To permit corporate officers to escape liability under section 6672 by entering into agreements which prefer other creditors to the government would defeat the entire purpose of the statute. As we have noted, and as section 7501(a) makes explicit, withholding taxes are held in trust. We cannot imagine that in any other context a trustee could avoid his obligation by entering into an agreement by which funds entrusted to him are used to pay his other obligations. Similarly, we will not permit appellants so to escape their obligations here.

505 F.2d at 510. Neither can this court permit respondent to escape his obligation. As a responsible person under federal law "should not be able to escape section 6672 liability merely by contractually binding the employer to breach a statutorily imposed duty," Makel and Chadwick at 518, neither should an employer, under Minnesota law, be able to escape personal liability under section 290.92 by so contracting. As the *Davidson* court observed, with regard to Davidson, respondent there always had the option "to terminate the [corporation's] operation rather than to permit the use of trust funds for other corporate obligations." 558 F.Supp. at 1058. Whether analyzed under the language of the statute or under the "responsible person" standard developed under federal law, we hold that respondent had legal control of the payment of wages within the meaning of Minn. Stat. § 290.92, subd. 1(4), so as to be an employer, within the meaning of that section, personally liable for unpaid withholding taxes owing by the corporation. To hold otherwise would be to ignore the plain language of the statute and to frustrate the intent of the legislature to enforce the fiduciary duty of corporations to collect trust fund taxes.

The question remains as to whether respondent was the "person" responsible for paying sales taxes under section 297A.01, subd. 2. The tax court found that respondent was not a responsible person and that he was not personally liable for

the unpaid sales taxes of Benoit, Inc. Section 297A.01, subd. 2, which defines the "persons" liable for unpaid sales tax, encompasses an even broader class of potentially liable parties than the definition of employer in section 290.92, subd. 1(4). The definition of "persons" in subdivision 2 is similar to the IRC definition of the "persons" who can be liable for unpaid withholding taxes. Section 297A.01, subd. 2, like section 6672, imposes liability on those persons who have "the control, supervision or responsibility" for the filing and payment of taxes. To the extent that both the federal and state statutes hold a broad group of persons who are required to "account for and pay over" taxes liable for unpaid taxes, case law addressing the "responsible person" standard is useful.

As we have noted in discussing respondent's liability for unpaid withholding taxes, the test for responsible person status is a functional one which focuses on those persons who have the power and responsibility to see that the taxes are paid. *Taubman*, 499 F.Supp. at 1137. The courts have looked at the following factors in determining who is a responsible person:

(1) The identity of the officers, directors and stockholders of the corporation and their duties;

(2) The ability to sign checks on behalf of the corporation;

(3) The identity of the individuals who hired and fired employees;

(4) The identity of the individuals who were in control of the financial affairs of the corporation; and

(5) The identity of those who had an entrepreneurial stake in the corporation.

*Davidson*, 558 F.Supp. at 1052 (citations omitted). The facts before us are that respondent was the sole remaining person in the corporation with any authority during the time the taxes were unpaid. He was the only officer who had an entrepreneurial stake in the corporation. Although Maryland had control over the disbursement of funds, respondent retained the authority to sign business checks and to manage the daily affairs of Benoit, Inc.

during the time the security agreement was in effect. He collected accounts receivable, made sales and was responsible for the employees of the company. Of greatest importance is the fact that during the entire period of time Maryland required Benoit to follow the restrictive financial arrangements, respondent continued to prepare and sign the Minnesota sales tax returns.

Moreover, Benoit, Inc. had the funds with which to pay the delinquent sales taxes. Respondent testified at trial that from December 1983 through August 1984, he collected over one million dollars in accounts receivable. As the commissioner notes, that the sales proceeds were subsequently turned over to a secured creditor does not change the fact that it was Benoit, Inc. which made the taxable sales and the Benoit, Inc. officers who were responsible for and did in fact file the tax returns. We hold that respondent was a "person" within the meaning of Minn.Stat. § 297A.01, subd. 2, who had "the control, supervision or responsibility" of filing returns and making payment of the amount of sales tax owing by the corporation so as to be personally liable for the unpaid tax. Under section 297A.01, subd. 2, as under section 290.92, subd. 1(4), a corporate officer cannot escape personal liability by contracting to breach the statutorily imposed duty to pay trust fund taxes. The judgment of the tax court is reversed; the order of the Commissioner of Revenue is reinstated.

Reversed, order of Commissioner of Revenue reinstated.