**Melvin A. KRECH, Relator,**

v.

**COMMISSIONER OF REVENUE, Respondent.**

No. C2–96–80.

Supreme Court of Minnesota.

Jan. 9, 1997.

Steven E. Antolak, Laurence A. Anderson, London Anderson Antolak & Hoeft, Ltd., Minneapolis, for relator.

Hubert H. Humphrey III, Atty. Gen., James W. Neher, Asst. Atty. Gen., Tax Litigation Div., St. Paul, for respondent.

## OPINION

ANDERSON, Justice.

This case comes to us on certiorari to the Minnesota Tax Court. Relator, Melvin A. Krech, challenges the Commissioner of Revenue's order assessing personal liability against him for unremitted employee withholding and sales taxes owed by his former employer, Checkerboard International, Inc. The tax court affirmed the commissioner's assessment for taxes payable for 1987, but reversed the assessment for taxes payable for 1988, concluding that Krech terminated his employment with Checkerboard in January 1988.

Krech filed a motion seeking amended findings of fact and conclusions of law or, alternatively, a new trial. The commissioner challenged Krech's motion as untimely because it was not filed within the 15–day stay ordered by the tax court. The tax court ruled that the Minnesota Rules of Civil Procedure govern the timeliness of post-trial motions to the court, and, therefore, held that Krech's motion was timely, but denied the motion on its merits. We affirm the tax court's conclusion that Krech's post-trial motion was timely filed, but reverse the court's imposition of personal liability against Krech for unremitted withholding and sales taxes.

In March 1987, Krech assumed a full-time position with Bloomington-based Checkerboard International, Inc. Checkerboard was founded by Robert York, who served as its President, Treasurer, and Chairman of the Board of Directors. Checkerboard owned five pizza stores in the Fargo–Moorhead area and, at the time Krech was hired, was attempting to develop a national chain of franchised Checkerboard pizza stores.

Krech possessed considerable experience in the banking industry, and, when hired, harbored the expectation that he would be named Checkerboard's Vice President of Finance and would, in his words, be responsible to "oversee and manage all the financial aspects of the corporation." After he was hired but before he began work, Krech expressed this expectation in a confirmatory letter to York. Krech also utilized this letter to document two short-term cash loans to Checkerboard totalling $32,550. and a stock loan of 5,000 shares to Checkerboard, as well as his expectations for repayment of the loans and return of the stock. The record reflects that Krech did own stock in Checkerboard, but that his stock ownership amounted to less than 1% of the outstanding stock of the corporation. Despite his expectations, Krech was never named an officer of Checkerboard and testified that he attended board of directors' meetings infrequently—only when asked to attend for a specific reason.

Krech's primary responsibilities at Checkerboard were to monitor its cash flow, accounts receivable, and accounts payable and to provide regular reports on the corporation's financial condition to corporate officers. Although Krech was a signatory on all corporate checking accounts, he contends that he actually had limited authority to pay creditors. First, he asserts that the general corporate checking account required two signatures for any check drawn in an amount greater than $500. Second, he claims that he was not permitted to pay bills in any amount without the specific approval of York. Krech testified, and York's testimony substantially confirmed, that Krech prepared a list of current accounts payable, including taxes due, and submitted the list for approval to York. York then allocated Checkerboard's increasingly limited funds among the creditors listed. Krech also testified that he was not authorized to borrow funds on behalf of Checkerboard and lacked the authority to hire and fire employees.

The tax court questioned Krech's credibility as an interested party and specifically credited the partially contradictory testimony of Checkerboard's former Vice President and Director of Operations, David Unmuth.[1] Unmuth's testimony was received by the tax court in the form of a transcript of his testimony from the trial of Krech's suit against the United States for a refund of levies against his personal assets for Checkerboard's unremitted social security and federal withholding taxes. Unmuth testified that although he assumed Krech consulted with York when there were not enough funds to pay all creditors, he sometimes observed Krech write and sign checks without York's approval. Unmuth further testified that he occasionally observed Krech attempting to work out time payment schedules with particular creditors without consulting York. The tax court placed significant weight on Unmuth's testimony, concluding that Krech had the authority to, and did, issue checks without York's permission.

The tax court found that Krech held himself out as Checkerboard's Vice President; that a check written to the commissioner was drawn on Krech's signature stamp in July 1987; and that Krech prepared and signed the Employers Quarterly Federal Tax Return (Form 941) of withholding for the first quarter of 1987, although the actual return was filed under York's signature. Krech disputes the court's finding that he held himself out as an officer of the corporation. He points out that numerous documents, including mandatory annual report and prospectus filings with the state, fail to list him as an officer. He also challenges the significance of a franchise circular and salesman's disclosure form offered by the commissioner which list Krech as an officer. Krech testified, and Unmuth confirmed, that all Checkerboard employees were given titles in the franchise circular: for example, Checkerboard's receptionist was listed as "new franchise store opening coordinator."

Krech contends that he had little involvement in the computation of payroll or the payment of wages. Unmuth and his assis-

---

1. We note that although the tax court credited David Unmuth's testimony over that of Krech, Unmuth also appears to have been at least a potentially interested party. As Vice President and Director of Operations, Unmuth participated significantly in the financial management of the corporation; thus, he faced potential liability for the taxes in question.

tant Amy Metcalf reported payroll data to an independent payroll service company and the payroll service calculated the amount to be withheld and prepared the withholding tax returns for Checkerboard. Krech then reviewed the returns for errors he could discern before passing them along to York, who signed and filed them. Krech asserts that he at no time had the authority to sign or file the finalized returns and that his involvement in remitting withholding taxes consisted simply of placing the amount due on his payables list for York's review.

Finally, Krech contends that he had no involvement in the payment of sales taxes. He points out that he signed no sales tax returns for Checkerboard and points to two sales tax returns signed by Metcalf as proof that others were responsible for filing the returns and for payment of the sales taxes due.

By December 1987, Checkerboard was in serious financial difficulty and, on December 17, York resigned as president. By this time, Krech and the remaining employees were receiving no compensation for their services. Consequently, Krech abandoned his employment with the company in January 1988. Checkerboard subsequently filed for bankruptcy. In April 1988, when the company was preparing its bankruptcy filings, Krech testified he was asked by York's successor to come to Checkerboard's offices to sign checks to withdraw all funds from Checkerboard's operating accounts for deposit into its debtor-in-possession account. Krech's testimony reflects that he did so as a matter of convenience to Checkerboard.

Both the Internal Revenue Service and the commissioner sought to hold Krech responsible for delinquent taxes of Checkerboard. But the jury in the trial of Krech's suit against the United States for a refund of levies against his personal assets found that Krech was not "a person responsible for collecting, accounting for or paying over" social security and federal income taxes on behalf of Checkerboard.

The commissioner assessed personal liability against Krech pursuant to Minn.Stat. § 270.10, subd. 4 (1988) (repealed 1990), for unpaid sales and withholding taxes payable from June 1987 through June 1988. *See* Minn.Stat. §§ 290.92, subd. 1(4) (1996), 297A.01, subd. 2 (1996). In an order dated June 28, 1995, the tax court upheld the commissioner's determination that in 1987 Krech was an "employer" within the meaning of Minn.Stat. § 290.92, subd. 1(4) and a "person" within the meaning of Minn.Stat. § 297A.01, subd. 2, such that he could be held personally liable for unpaid withholding and sales taxes owed by the corporation. The court reversed the assessment of personal liability for 1988, concluding that Krech terminated his employment with Checkerboard in January 1988.

In a subsequent order amending its findings and affirming judgment, the tax court deleted its finding that "Mr. Krech was in charge of the financial affairs" of Checkerboard, but adhered to its assessment of personal liability. The court found determinative that "checks were issued upon Mr. Krech's signature, that he had check signing authority on various accounts and that Mr. Unmuth saw him write checks frequently." The court did, however, acknowledge that this case is a "close call." Krech argues on appeal that he possessed "simply the bare authority to affix his signature to checks" and that the tax court erred in determining that he was an "employer" responsible for the payment of withholding taxes of Checkerboard and a "person" responsible for the filing and payment of sales taxes of Checkerboard.

## I.

We review findings of fact of the tax court to determine whether there was "sufficient evidence to support the tax court's decision." *Benoit v. Commissioner of Revenue,* 453 N.W.2d 336, 339 (Minn.1990) (*quoting Nagaraja v. Commissioner of Revenue,* 352 N.W.2d 373, 376 (Minn.1984)); *see* Minn. Stat. § 271.10, subd. 1. But even when there is evidence to support factual findings, this court may order a reversal if, "upon reviewing the entire evidence, it is left with a firm conviction that a mistake has been made." *Montgomery Ward v. County of Hennepin,* 482 N.W.2d 785, 788 (Minn.1992) (citation omitted). Conclusions of law are freely re-

viewable. *Benoit,* 453 N.W.2d at 339; *see* Minn.Stat. § 271.10, subd.1.

The commissioner may assess personal liability against "any officer, director, or employee of a corporation" who as an officer, director, or employee of the corporation, falls within the personal liability provisions of so-called "trust fund" taxes, including section 290.92 for unpaid withholding taxes and chapter 297A for unpaid sales taxes owed by the corporation. Minn.Stat. § 270.10, subd. 4 (1988) (repealed 1990); *Benoit,* 453 N.W.2d at 339 ("[T]he withholding and sales taxes at issue in this case were collected * * * from third parties under an obligation that the taxes be held in trust for and paid over to the state of Minnesota, i.e., trust fund taxes." (footnote omitted)); *see Gephart v. United States,* 818 F.2d 469, 472 (6th Cir.1987) ("Withholding taxes are not simply a debt; they are * * * held by the employer in trust for the government.").

Minnesota Statutes section 290.92, subdivision 1(4) outlines the standard for personal liability for withholding taxes by defining those persons who are considered "employers" responsible for payment of such taxes:

> "[E]mployer" means any person * * * for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that if the person for whom the individual performs or performed the service does not have legal control of the payment of the wages for such services, the term "employer" * * * means the person having *legal control* of the payment of such wages. As used in the preceding sentence, the term "employer" includes * * * but is not limited to, officers of corporations who have legal control, either individually or jointly with another or others, of the payment of the wages.

Minn.Stat. § 290.92, subd. 1(4) (1996) (emphasis added).

The statutory language defining personal liability for sales taxes is similar, though somewhat broader, than that for withholding. Minnesota Statutes section 297A.01, subdivision 2 defines a "person" responsible for the payment of sales tax:

> "Person" includes any individual, partner, officer, director, firm, partnership * * * or private corporation * * *. As used in the preceding sentence, the term "person" includes, but is not limited to, directors and officers of corporations * * * who either individually or jointly with others, have the *control, supervision or responsibility* of filing returns and making payment of the amount of tax imposed by this chapter.

Minn.Stat. § 297A.01, subd. 2 (emphasis added).

This court's leading case on personal liability for withholding and sales taxes is *Benoit v. Commissioner of Revenue,* 453 N.W.2d 336 (Minn.1990). In *Benoit,* we developed a multi-factor standard for determining responsibility for unpaid sales taxes based on the federal "responsible person"[2] standard for determining personal liability for federal withholding taxes. *Id.* at 341–44. The *Benoit* test is a "functional one which focuses on those persons who have the power and responsibility to see that the taxes are paid." *Id.* at 342 (citations omitted). In *Benoit,* we explicitly applied the federally derived factors only in assessing personal liability for sales taxes, but we suggested that the same factors apply in assessing liability for withholding taxes. *Id.* at 341. The factors from *Benoit* which guide our determination of whether Krech is an "employer" with "legal control" over the payment of wages, as well as whether he is a "person" with "control, supervision or responsibility" for the payment of sales taxes, are:

(1) The identity of the officers, directors and stockholders of the corporation and their duties;

**2.** The federal standard requires a finding that the responsible person "willfully" fail to collect and pay over taxes, but willfulness is not required under Minnesota statutes. *See* 26 U.S.C. § 6672(a) (1994). Under the federal standard, willfulness is the second prong of a two-prong test, with the first prong focusing on "responsible person" status. *See United States v. Davidson,* 558 F.Supp. 1048, 1051 (W.D.Mich.1983). In *Benoit,* we found federal case law "helpful in defining * * * where officers would be deemed liable under Minnesota's 'legal control' standard of liability." *Benoit,* 453 N.W.2d at 341.

(2) The ability to sign checks on behalf of the corporation;

(3) The identity of the individuals who hired and fired employees;

(4) The identity of the individuals who were in control of the financial affairs of the corporation; and

(5) The identity of those who had an entrepreneurial stake in the corporation.

*Id.* at 344 (*citing United States v. Davidson,* 558 F.Supp. 1048, 1052 (W.D.Mich.1983)).

■ Krech points to the following relevant evidence in arguing that he clearly does not satisfy the *Benoit* factors. He was never an officer, director, or major stockholder of Checkerboard. York made all decisions as to the payment of creditors and Krech possessed only ministerial authority to process checks once York approved payment. Krech had no power to hire or fire employees. He was not in control of the financial affairs of the corporation, as reflected by the tax court's amended findings. Finally, he did not have an entrepreneurial interest in Checkerboard, as reflected by his minimal stock ownership and lack of participation in the management of the corporation.

The commissioner counters by claiming that Krech satisfies four of the five *Benoit* factors. The commissioner argues that while Krech was not formally an officer of the corporation, he represented himself to the public as such and served as its de facto financial officer. Next, the commissioner notes that the tax court found that Krech had signature authority over various corporate bank accounts. Moreover, the commissioner argues that the evidence reveals Krech "shared significant control over the disbursement of corporate funds," if not outright control of Checkerboard's financial affairs. Finally, the commissioner contends that Krech's loans to Checkerboard constituted an entrepreneurial stake in the corporation.

Applying the factors outlined in *Benoit,* we conclude that Krech was neither an "employer" with "legal control" over the payment of wages within the meaning of Minn.Stat. § 290.92, subd. 1(4), nor was he a "person" having "control, supervision or responsibili-

ty" for filing sales tax returns and making sales tax payments within the meaning of Minn.Stat. § 297A.01, subd. 2.

The first *Benoit* factor addresses the identity of the officers, directors, and stockholders of the corporation. Although a responsible party need not be an officer, director, or major shareholder of a corporation, Minnesota case law suggests that personal liability is typically assessed only on such individuals. *See, e.g., Carlson v. Commissioner of Revenue,* 517 N.W.2d 48, 51–53 (Minn.1994) (imposing liability on 50% shareholder); *Benoit,* 453 N.W.2d at 344 (imposing liability on sole shareholder and director); *Kazeminy v. Commissioner of Revenue,* 1992 WL 307897, at *3 (Minn.Tax Oct.23, 1992) (finding no liability for former director and officer whose interest was as secured creditor and 50.3% shareholder); *Davis v. Commissioner of Revenue,* 1992 WL 15473, at *3 (Minn.Tax Jan. 6, 1992) (assessing personal liability against president, director and sole shareholder).

The sole case cited by the commissioner in which an employee was held personally liable for trust taxes is *Gephart v. United States,* 818 F.2d 469, 476 (6th Cir.1987). In *Gephart,* the Sixth Circuit held that the general manager of a corporation who was responsible for its day-to-day administrative, accounting, and operating functions, was personally liable for unpaid withholding taxes. *Id.* at 474–75. Gephart was never a shareholder, director, or officer of the corporation, but testified that he had the authority to make initial determinations as to which creditors would be paid. *Id.* at 474. Despite the fact that others might be "more responsible" and "exercise greater authority" than Gephart, the Sixth Circuit held that he was a responsible person under the federal statute. *Id.* at 476 (emphasis omitted).

*Gephart* is clearly distinguishable from this case. Unlike Krech, Gephart exercised nearly exclusive everyday control over the financial affairs of the corporation. *Id.* at 471–72. He signed most corporate checks, including payroll checks, and had no monetary limits on his check signing authority. *Id.* He personally met with agents from the State of Michigan to attempt to work out arrange-

ments for the payment of delinquent taxes.[3] *Id.* at 472. He had the authority to hire and fire employees with the approval of the corporation's two shareholder/officers. *Id.* He periodically reviewed the accounts payable to determine which bills should be paid. *Id.* He also convened and played an active role in management meetings. *Id.* Finally, Gephart was offered the office of president of the corporation but declined, both because he feared personal liability for tax delinquencies and because he "believed [being named president] would not change his authority within the office." *Id.*

■ Nonetheless, the commissioner asserts that Krech, like Gephart, is responsible because he accepted employment with Checkerboard, in his own words, to "oversee and manage all the financial aspects of the corporation," and because Unmuth understood him to be vice president and chief financial officer. It is true, as the commissioner asserts, that Krech need not be exclusively "in charge" of Checkerboard's financial affairs to be liable for its taxes, as joint liability is expressly provided for by statute and endorsed by relevant case law. Minn. Stat. §§ 297A.01, subd. 2, 290.92, subd. 1(4); *see Gephart,* 818 F.2d at 473; *Platt v. United States,* 519 F.Supp. 203, 210 (N.D.Ill.1981). However, neither Krech's initial vision of himself as chief financial officer of the corporation nor the perception of Unmuth is sufficient to establish that Krech ever exercised the degree of control exercised by Gephart or required under Minnesota law. We therefore conclude that the first *Benoit* factor is not met.

In examining the second *Benoit* factor, the tax court found that Krech had signature authority on all corporate accounts and that a single check written to the commissioner was drawn on Krech's signature stamp in July 1987. The court failed, however, to resolve the conflicting testimony as to the extent of Krech's authority to write checks, whether Krech, in fact, drafted the check to the commissioner, and whether Krech had significant control over the payment of invoices.

■ Although a person need not have the "final word as to which creditors should be paid in order to be subject to [personal] liability," he must have "significant control" over the disbursement of funds. *Gephart,* 818 F.2d at 475. Thus, while we conclude that the second *Benoit* factor is met on these facts, we note that check signing authority without further indicia of control is not enough to establish personal liability. *See, e.g., Barton v. United States,* 988 F.2d 58, 60–61 (8th Cir.1993) (holding that government's assessment against corporation's vice president and secretary for unpaid corporate taxes had no reasonable basis because government failed to establish he had " 'significant authority' " over payment of taxes (citation omitted)); *Geiger v. United States,* 583 F.Supp. 1166, 1168–69 (D.Ariz.1984) (denying personal liability assessment when employee signed checks only at behest of president of corporation); *In re Williams,* 179 B.R. 929, 933–34 (Bankr.D.Mont.1995) (denying personal liability when the employee had check writing authority but "was not involved in the process of deciding which creditors to pay and which not to pay").

The commissioner apparently concedes that Krech had no authority to hire and fire Checkerboard employees. We agree and, therefore, conclude that the third *Benoit* factor is not met.

In arguing that he does not satisfy the fourth *Benoit* factor, Krech relies heavily on the tax court's amendment to its original findings in which it deleted the finding that he was "in charge" of the financial affairs of Checkerboard. He renews his arguments that his check signing ability was purely ministerial and subject to York's direction, that he did not have control over the payment of wages, and that he had no responsibility for executing or filing tax returns. Of these assertions, only the second is clearly established by the record. The extent of Krech's check signing authority is inconclusive on the record—at least one check payable to the commissioner was drawn under

---

**3.** York testified that he, and not Krech, met with IRS representatives to attempt to work out payment arrangements for the delinquent federal

withholding and social security taxes owed by Checkerboard.

Krech's signature stamp. Krech properly notes that the commissioner failed to produce a single sales or withholding tax return actually filed under his signature and points to two sales tax returns signed by Amy Metcalf as proof of his lack of financial control.

This court broadly defined "financial control" in its previous decisions. In *Benoit,* we held that an otherwise responsible person could not avoid liability for trust fund taxes under state law by contractually surrendering financial control to a secured creditor. *Benoit,* 453 N.W.2d at 343-44. *See also Carlson,* 517 N.W.2d at 51-52 (holding that partner's agreement to leave day-to-day management to equal partner was insufficient basis to escape liability because he remained in "legal control" of the corporation). However, we do not believe that Krech meets even the broad definition of control we set forth in *Benoit.* The respondent in *Benoit* was the corporation's sole shareholder and director; he clearly possessed legal control of the corporation and contracted it away. *Benoit,* 453 N.W.2d at 339-41. Krech simply never exhibited such control. Accordingly, we conclude that the fourth *Benoit* factor is not met.

Turning to the final *Benoit* factor, Krech argues that he did not possess an entrepreneurial stake in the corporation. He contends that his ownership of less than 1% of the outstanding stock of the corporation, combined with York's failure to consult with him regarding major financial decisions, yields only the conclusion that he did not have an entrepreneurial stake in Checkerboard.

The commissioner, on the other hand, argues without citing relevant case law that Krech's 1% stock interest, when combined with his cash and stock loans to Checkerboard, constitutes such a stake. The record is unclear as to how, or if, the loans in question were paid off. However, Krech's lack of participation in Checkerboard's financial affairs belies the commissioner's assertion.

We conclude that the tax court erred as a matter of law in holding that Krech was a responsible person under the factors outlined by this court in *Benoit.* Krech clearly met only one of the *Benoit* factors: he possessed the ability to sign checks on behalf of the corporation. The court placed undue emphasis on Krech's check signing authority and his own initial expectations for his role in the corporation. We are not convinced that Krech realized even a fraction of the control he initially envisioned he might have over Checkerboard's financial affairs. Moreover, Krech's check signing authority, "without more, is a weak pillar on which to rest a liability determination," *Barrett v. United States,* 217 Ct.Cl. 617, 580 F.2d 449, 453 (1978), particularly when, as here, the potentially responsible person is a mere employee of the corporation. Accordingly, we reverse the commissioner's assessment of personal liability.

## II.

The tax court's original order dated June 28, 1995 provided that it was a final order and was to be stayed for 15 days. Krech's post-trial motion seeking amended findings of fact and conclusions of law or a new trial was served by letter dated September 15, 1995, nearly three months later.

The commissioner argues that because Krech's motion was served and filed after the expiration of the 15-day stay, the tax court should have dismissed the motion as untimely. The Minnesota Rules of Civil Procedure provide that a motion for a new trial or amended findings must be made within 15 days after "service of notice by a party of the filing of the decision or order." Minn. R. Civ. P. 59.03; *see also* Minn. R. Civ. P. 52.02. However, the commissioner contends the rules are superseded in this matter by the stay ordered by the tax court. The argument relies initially on the language of Minn. Stat. § 271.08, subd. 1 which governs the giving of notice of tax court decisions, and provides:

**Written order.** The tax court * * * shall determine every appeal by written order * * *. A certified copy of the order shall be transmitted to the commissioner of revenue or the appropriate unit of government and filed in that office. Notice of the entry of the order and of the substance of the decision shall be given by mail to all

other parties who have appeared, and also, in all cases where the amount at issue exceeds $100, to the attorney general.

Minn.Stat. § 271.08, subd. 1 (1996).

The commissioner contrasts this language to that of Minn. R. Civ. P. 77.04, which governs the giving of notice of nontax orders, decisions, or entries of judgment before the district courts. Rule 77.04 provides in relevant part:

Immediately upon the filing of an order or decision or entry of a judgment, the court administrator shall serve a notice of the filing or entry by mail upon every party affected thereby * * * *but such notice shall not limit the time for taking an appeal or other proceeding on such order, decision, or judgment.*

Minn. R. Civ. P. 77.04 (emphasis added).

The commissioner argues that because the highlighted language is absent in Minn.Stat. § 271.08, the "15–day stay routinely ordered by the Tax Court * * * starts the time for post-trial motions running." Because the tax court "routinely" stays orders to allow the losing party to file post-trial motions, the commissioner argues that to conclude notice is required under rules 52.02 and 59.03 would be "superfluous and out of step with customary Tax Court practice."

The tax court correctly held that Krech's motion was timely filed under rules 52.02 and 59.03, which govern in this case. The critical inquiry is not whether the giving of notice is out of step with tax court practice, but rather whether it is required by the Minnesota Rules of Civil Procedure. The tax court has expressly adopted the Minnesota Rules of Civil Procedure except as otherwise "modified or amended" by the rules of the tax court. Minn. R. 8600.0300 (1995). Because we find nothing in the rules of the tax court which modifies or amends rules 52.02 or 59.03, we hold that a party must serve notice of the filing of the decision or order to start the 15–day time constraint provided for by rules 52.02 and 59.03. Because no party served notice of filing of the court's order,

the court correctly concluded that Krech's post-trial motion was timely filed.

Affirmed in part and reversed in part.

BLATZ, J. took no part in the consideration or decision of this case.