**David IGEL, Relator,**

v.

**COMMISSIONER OF REVENUE, Respondent.**

No. C3–96–1951.

Supreme Court of Minnesota.

July 17, 1997.

---

Rachel A. Igel, Minneapolis, for Relator.

Hubert H. Humphrey III, Minnesota State Atty. Gen., Craig R. Anderson, Asst. Atty. Gen., Tax Litigation Div., St. Paul, for respondent.

## OPINION

GARDEBRING, Justice.

This case comes to us from the Minnesota Tax Court on a writ of certiorari. Relator David Igel, formerly vice president of Recreational Concepts, Inc. ("the Company"), seeks reversal of the tax court's decision that he is personally liable for the sales tax owed, but not paid, by the Company for the months of January and February 1994. We affirm.

Igel and Greg Love incorporated Recreational Concepts, Inc. in April 1993, to operate a charter boat operation on Lake Minnetonka. In the fall, the Company expanded its services to offer snowmobile rental in northern Minnesota. The Company was run by Love, who held the title of president, and Igel, who was vice president. The Company hired about two dozen employees to handle operations, including Patrick Reese, who served as the general manager and was primarily responsible for all financial recordkeeping. Reese prepared all sales tax and withholding tax returns and was responsible for submitting them to the tax authorities.

In January 1994, the Company began having financial problems and a secured creditor exercised the right to take control of the Company. Because Reese had indicated that all sales and withholding tax had been paid, Igel and others involved in managing the company discussed ways to pay creditors other than the Internal Revenue Service and the Minnesota Department of Revenue.

The Company's financial reports and records corroborated what Reese was reporting. They showed that all sales tax had been paid and that the Company had timely filed monthly sales tax returns. However, the checks that accompanied the January and February tax returns were not signed and the state subsequently returned them to the Company.

Igel left the Company June 2, 1994. It was not until after that time that he learned that the checks sent with the various tax returns had not been signed. Igel testified at the tax court hearing that he was not sure when the checks were returned to the Company, indicating that Reese "either didn't open them or decided not to tell us about it * * *." Igel also testified that he personally understood the importance of paying taxes. He was in his early twenties when he formed the company and sought advice from family members who stressed the need to keep current on tax obligations.

In September 1994, the Commissioner of Revenue assessed personal liability against Igel in the amount of $13,261.83 for the Company's unpaid sales and withholding tax

for the taxable periods ending December 31, 1993, January 31, 1994 and February 28, 1994.[1] Igel administratively appealed the commissioner's order and that appeal was denied by the commissioner in a December 9, 1994 order.

On appeal, the tax court held that Igel was personally liable for the unpaid sales tax. In its order for judgment in favor of the commissioner, the tax court did not specify the judgment amount, but as of the date of hearing, March 12, 1996, the balance due, including tax, penalty, interest and other charges, was $12,620.26.

▄▄▄ This court reviews findings of fact of the tax court to determine whether there was sufficient evidence to support the tax court's decision. *Benoit v. Commissioner of Revenue*, 453 N.W.2d 336, 339 (Minn.1990). Conclusions of law, including interpretations of statutes are, however, subject to de novo review. *Carlson v. Commissioner of Revenue*, 517 N.W.2d 48, 51 (Minn.1994).

▄▄▄ When a corporation collects sales tax from third parties, the corporation does so under an obligation to hold the tax in trust for and to pay it over to the state of Minnesota. *Benoit,* 453 N.W.2d at 339. When sales tax goes unpaid by the corporation, personal liability may be imposed on certain parties involved in the corporation. The authority for the imposition of personal liability for the payment of tax is found in Minnesota Statutes:

> Subdivision 1. **Liability imposed.** A person who, either singly or jointly with others, has the control of, supervision of, or responsibility for filing returns or reports, paying taxes, or collecting or withholding and remitting taxes and who fails to do so, or a person who is liable under any other law, is liable for the payment of taxes, penalties, and interest arising under chapters 296, 297, 297A [sales tax statute], and 297C, or sections 290.92, 349.212, and 349.2121.

> Subdivision 2. **Person defined.** The term "person" includes, but is not limited to, a corporation, estate, trust, organization, or association, whether organized for profit or not, an officer or director of a corporation, a member of a partnership, an employee, a third party (including but not limited to, a financial institution, lender, or surety), and any other individual or entity.

Minn.Stat. § 270.101, subds. 1, 2 (1992). Section 270.101 was enacted in 1990 effective for tax due on or after August 1, 1990. Act of Apr. 24, 1990, ch. 480, art. 2, §§ 2, 19, 1990 Minn. Laws 1033, 1098, 1107.

The question presented is whether Igel was "a person" who had "control of, supervision of, or responsibility for filing returns or reports, paying taxes, or collecting or withholding and remitting taxes" and failed to do so.

While this case is the first involving sales tax liability under this new statute, we are guided by our recent analyses concerning the imposition of personal liability for delinquent sales tax under section 270.10, subd. 4 (1988) (repealed 1990) (assessing liability on corporate officers, directors, or employees who fall within personal liability provisions of "trust fund" taxes, including chapter 297A for unpaid sales tax) and under section 297A.01, subd. 2 (1988) (defining person responsible for paying sales tax). These two provisions, taken together, were the predecessor statutory scheme for the imposition of personal liability for sales tax. *See Krech v. Commissioner of Revenue,* 557 N.W.2d 335, 339 (Minn.1997); *Benoit,* 453 N.W.2d at 340.

▄▄▄ Specifically, in *Benoit,* we developed a multi-factor analysis for establishing the existence of personal liability for unpaid sales tax under sections 270.10, subd. 4 and 297A.01, subd. 2. We conclude that in the instant case, when imposition of liability on a corporate officer for a sales tax deficiency is at issue, the *Benoit* factors can likewise be used to govern our analysis under section 270.101. They are:

---

1. By the time the tax court issued its ruling, the withholding tax and the taxable period ending December 31, 1993 were no longer at issue.

Consequently, the tax court's decision addressed only the sales tax owing for the periods ending January 31, 1994 and February 28, 1994.

(1) The identity of the officers, directors and stockholders of the corporation and their duties;

(2) The ability to sign checks on behalf of the corporation;

(3) The identity of the individuals who hired and fired employees;

(4) The identity of 'the individuals who were in control of the financial affairs of the corporation; and

(5) The identity of those who had an entrepreneurial stake in the corporation.

*Benoit*, 453 N.W.2d at 344.

As a corporate officer of the Company, Igel was a "person" within the meaning of the personal liability statute. Minn.Stat. § 270.101, subd. 2. The question is whether he had "control of, supervision of, or responsibility for" the payment of taxes. Before the tax court, Igel conceded that he satisfied all of the *Benoit* factors. He admitted he had been an officer and shareholder since the Company's inception; that he had check signing authority; that he took part in hiring and firing employees; that he signed financial and other documents on behalf of the Company; that he was involved in meetings to discuss how creditors would be paid; and that he had an entrepreneurial stake in the Company. He argued, nevertheless, that he should not be held personally liable for the unpaid sales tax because he did not know that the sales tax was unpaid until after he left the company and he no longer had check signing authority at that time. The tax court rejected the argument, concluding that it was irrelevant that the unpaid tax was discovered after Igel left the company.

On appeal before this court, Igel makes two arguments. First, without conceding that the *Benoit* factors are satisfied, he contends he ought not be liable because he did not "fail" to pay the sales tax, as required to impose personal liability under section 270.101, subd. 1. Second, Igel argues he is not liable under a *Benoit* analysis because the factors were not satisfied at the time the deficiency was discovered. An analysis of each argument demonstrates that neither compels a different result than that reached by the tax court.

■ Igel's first argument, that he did not fail to pay the tax, is premised on the contention that the statute which imposes personal liability on a "person," section 270.101, subd. 1, is ambiguous in that the meaning of "fail to pay" is unclear. According to Igel, the legislature could not have intended a person who acts prudently to be held liable for unpaid tax. For a person to "fail to pay" tax, Igel contends, the person's behavior must be negligent; it must fall below some "prudent businessperson" standard. And, he argues, because he acted as a prudent businessperson in setting the tax payment as the highest priority, ensuring funds were available to pay the tax, and employing and relying upon Reese to handle tax matters, he should not be held liable.

Igel's contention that the statute is ambiguous has no merit. The statute is clear on its face—when tax owed by a business entity is not paid, a person, as defined in section 270.101, subds. 1–2, becomes personally liable for that unpaid tax. Minn.Stat. § 270.101, subd. 1. Additionally, Igel's focus on the phrase "fails to pay" taxes in section 270.101 for support of his "prudent businessperson" defense is misplaced. While the statute does not define the term "fails," we may look to its common meaning. Minn.Stat. § 645.08(1) (1996). "Fail" is defined as "to fall short * * * to be unsuccessful." *Merriam Webster's Collegiate Dictionary* 417 (10th ed.1996). Neither the statute, nor the dictionary, nor common sense dictate the inclusion of a "best efforts" defense for failure to pay tax. Section 270.101 imposes a duty on certain persons to ensure that a company's taxes are paid. When taxes are not paid, such persons are liable for the delinquency.

■ To further bolster his argument that he did not "fail to pay," Igel points to the provision in federal law that imposes liability for unpaid taxes only when a responsible person "willfully" fails to collect and pay over taxes, 26 U.S.C. § 6672(a) (1994). He argues that because federal law sometimes is used to interpret this state's tax statutes, this court ought to impose the federal "willfulness" standard on the sales tax scheme detailed in section 270.101. Igel ignores the absence of a "willfulness" requirement in the state stat-

ute and essentially asks this court to insert words into an otherwise unambiguous statute, something we are loath to do. *See Green Giant Co. v. Commissioner of Revenue,* 534 N.W.2d 710, 712 (Minn.1995); *Wallace v. Commissioner of Taxation,* 289 Minn. 220, 230, 184 N.W.2d 588, 593 (1971). We decline to take up Igel's suggestion that we insert into the tax scheme for personal liability additional requirements not suggested, much less required, by the plain language of the statute.

Igel's second argument is, likewise, unpersuasive. He argues, much as he did in the tax court, that to be held personally liable, he must be shown to have control, supervision or responsibility for tax matters at the time the sales tax goes unpaid *and* at the time the discrepancy is discovered. Because Igel had "absolutely no control at the time the deficiency was discovered," he argues that the *Benoit* factors are not satisfied and he is, therefore, not personally liable.

We disagree. Liability for trust fund taxes, including sales tax, arises at the time the tax is collected. *See Olsen v. United States,* 952 F.2d 236, 238 (8th Cir.1991) (noting that liability for federal employment tax withholdings coincides with collection of funds and not the date the employer is required to pay them over to the government). Thus, the critical time frame for determination of personal liability under section 270.101, subd. 1, is the time of collection. This is the point at which Igel became a trustee of the sales tax funds. He had a continuing obligation to turn over those funds to the state—his duty did not cease when he left the Company. A rule such as the one suggested by Igel would lead to absurd results. Under Igel's framework, in which liability may be imposed only if the person was in control of or had responsibility for taxes both at time of the deficiency and at the time of the deficiency's discovery, an employer could conceivably embezzle sales tax funds due to the state of Minnesota and avoid tax liability by leaving the company before anyone discovered the theft.

In sum, we are unpersuaded by Igel's arguments and conclude that he is a "person" within the meaning of section 270.101, subd.

2, who failed to pay tax and is therefore personally liable for the Company's unpaid sales tax for the periods ending January 31, 1994 and February 28, 1994 pursuant to section 270.101, subd. 1.

Affirmed.

BLATZ, J., took no part in the consideration or decision of this case.