662 S.E.2d 697

**Barry D. SCHMEHL, an individual as an officer of Filly's of America, Inc., Petitioner Below, Appellant**

v.

**Virgil T. HELTON, Acting State Tax Commissioner of West Virginia, Respondent Below, Appellee.**

No. 33379.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 9, 2008.

Decided Feb. 27, 2008.

Concurring and Dissenting Opinion of Justice Albright April 4, 2008.

Michael E. Caryl, Esq., Bowles, Rice, McDavid, Graff & Love, Charleston, WV, for Appellant.

**100**

Darrell V. McGraw, Jr., Attorney General, A.M. "Fenway" Pollack, Assistant Attorney General, Charleston, WV, for Appellee.

STARCHER, J.

In this case we uphold a decision by the Circuit Court of Jefferson County holding that a corporate officer and bookkeeper for a bar and restaurant business can be held liable to the State Tax Department for consumer sales taxes that were collected by the business from customers, but were not sent in to the State as required by law.

## I.

### Facts & Background

In the instant case, the Circuit Court of Jefferson County, in a July 5, 2006 order, upheld a ruling by the West Virginia Office of Tax Appeals in favor of the appellee, the Tax Commissioner of the State of West Virginia. The Tax Commissioner had ruled that the appellant, Barry D. Schmehl, was liable to the State of West Virginia for $172,816.63. This sum represented unremitted consumer sales taxes that were collected from customers making purchases at a bar and restaurant in the Town of Ranson, in Jefferson County, West Virginia—plus penalties and interest. The bar and restaurant was owned and operated by a West Virginia corporation, Filly's of America, Inc. ("Filly's"). Mr. Schmehl was Filly's corporate secretary and principal bookkeeper. Additional pertinent facts are presented in section III of this opinion.

## II.

### Standard of Review

The issues in the instant case largely involve the application of the law to undisputed facts, in which circumstances we review the lower tribunals' rulings under a *de novo* standard. *In re Petrey*, 206 W.Va. 489, 490, 525 S.E.2d 680, 681 (1999).

1. No issue is presented regarding the liability of

## III.

### Discussion

Two issues are presented in the instant case. The first issue is whether Mr. Schmehl can be held personally liable for sales taxes that were collected by Filly's but not remitted to the State.[1] The second issue is whether, assuming such personal liability is proper, the applicable statute of limitations bars collection of unremitted taxes from Mr. Schmehl.

### A.

### Personal Liability for Unremitted Sales Taxes

We begin our discussion of this issue by identifying the principles of law that will guide our decision. Then we discuss the particular facts of the instant case in light of those principles.

The primary applicable statute involved in the instant case is *W. Va.Code*, 11–15–17 [1978], which states, in full:

> If the taxpayer is an association or corporation, the officers thereof shall be personally liable, jointly and severally, for any default on the part of the association or corporation, and payment of the tax and any additions to tax, penalties and interest thereon imposed by article ten [§ 11–10–1 et seq.] of this chapter may be enforced against them as against the association or corporation which they represent.

▪ Addressing a prior but similar version of *W.Va.Code*, 11–15–17 [1978], this Court held in Syllabus Point 2 of *State ex rel. Haden v. Calco Awning*, 153 W.Va. 524, 170 S.E.2d 362 (1969):

> "To establish that a taxing statute, valid on its face, is so unreasonable or arbitrary as to amount to a denial of due process of law when applied in a particular case, the taxpayer must prove by clear and cogent evidence facts establishing unreasonableness or arbitrariness." Point 4, Syllabus, *Norfolk and Western Railway Company v. Field*, 143 W.Va. 219 (100 S.E.2d 796).

any other officer of Filly's in the instant case.

In *Haden v. Calco Awning,* a circuit court had declared that the prior version of *W. Va. Code,* 11–15–17 [1978] was unconstitutional. The circuit court concluded that the statute's facial imposition of personal liability on corporate officers for unpaid sales taxes, without any requirement to show connection, duty, or responsibility on the officer's part regarding the payment of the taxes in question, had the potential to unconstitutionally deprive a corporate officer of property without due process of law.

Reversing the circuit court in *Calco Awning,* this Court stated:

The principal issue on this appeal is the constitutionality of the provisions of Code, 1931, 11–15–17, as amended. That code section, where pertinent, provides: "If the taxpayer is an association or corporation, the officers thereof shall be personally liable, jointly and severally, for any default on the part of the association or corporation, and payment of the tax may be enforced against them as against the association or corporation which they represent."

The tax commissioner, of course, defends the constitutionality of that section. The individual defendants take the position that the subject statute deprives them of their property without due process of law by imposing upon them a tax of a third party (the corporation) and is therefore unconstitutional as violative of the Constitution of West Virginia and the Constitution of the United States.

* * *

These contentions [by the defendants in *Calco Awning* ] are without merit. The position of an officer of a corporation, relative to his individual liability for the debts of the corporation, is not sacrosanct. While officers ordinarily are not held responsible for corporate debts, it is well established that where a statute so provides directors or officers may be required to account personally for certain obli-

gations of the corporation. Such liability is usually imposed by statute for some official delinquency and so long as the statute is afforded a fair and reasonable interpretation so as to give effect to the legislative intent as indicated by the language used, it is valid.

* * *

While the presumption of the constitutionality of a statute is not conclusive it takes clear and convincing proof of unreasonableness or arbitrariness to successfully rebut it. As stated in 17 M.J. Statutes, Section 29, "A statute will not be declared unconstitutional unless its repugnance to the constitution be plain and palpable." In the instant case the defendants assert that the statute is arbitrary, unreasonable and capricious in its application. No proof, however, was offered in support of this assertion, the case having been submitted for decision on the pleadings. In the circumstance of the present record there is no way to determine whether the statute was applied in the manner alleged by the defendants.

An examination of the statute fails to reveal any language that would render it unconstitutional. This is a tax which the vendor shall collect from the purchaser and pay to the tax commissioner for the privilege of selling tangible personal property and of dispensing certain selected services. Code, 1931, 11–15–3, as amended. Said vendor, Calco in the instant case, merely collects and holds this tax money for the state. This money, in effect, is held in trust.[2]

* * *

This Court has repeatedly held that a statute may be constitutional on its face but may be applied in an unconstitutional manner. This is cogently reflected in *Norfolk and Western Railway Company v.*

2. The author of this opinion remembers when small town and country stores would keep a container like a jar or box next to the cash register on the counter, where the storekeeper placed the consumer sales tax portion of the money paid by customers at the time of a pur-

chase. "That's for our Governor!" the storekeeper would say, dropping coins into the container. Today, computers do this separation almost everywhere—but the principle that sales tax receipts are separately held in trust by the merchant for the State has not changed.

*Field,* 143 W.Va. 219, 100 S.E.2d 796, wherein the Court said in point 3 of the syllabus, "A taxing statute, though valid on its face, may be invalid when applied to particular circumstances or conditions of a particular taxpayer." Demonstrating that the burden of proof in establishing unconstitutionality of a statute rests on the assailant of the tax is point 4 of the syllabus which reads as follows: "To establish that a taxing statute, valid on its face, is so unreasonable or arbitrary as to amount to a denial of due process of law when applied in a particular case, the taxpayer must prove by clear and cogent evidence facts establishing unreasonableness or arbitrariness."

*Id.,* 153 W.Va. at 526–530, 170 S.E.2d at 364–366 (citations omitted, emphasis added).[3]

This Court also addressed *W. Va.Code,* 11-15-17 [1978] in *Frymier–Halloran v. Paige,* 193 W.Va. 687, 458 S.E.2d 780 (1995). In *Frymier–Halloran,* the corporate officer in question (the secretary of the corporation) was held to be "personally responsible for state tax compliance ... due to personal and computer problems [when] she ... failed to file several state tax returns and to remit all of the tax due." *Id.* at 690, 458 S.E.2d at 783.

■ This Court stated in Syllabus Point 1 of *Frymier–Halloran:*

> W.Va.Code, 11–15–17 (1978), explicitly provides that an officer of a corporation shall be personally liable for any consumers sales and service tax along with any additions, penalties, and interest thereon owed by the corporation.

This Court further stated in *Frymier–Halloran:*

> There is clear authority that if an individual is deemed to be an officer of a corporation, such individual may be held personally liable for the consumers sales and service tax of such corporation. W.Va. Code, 11–15–17 (1978), explicitly provides that an officer of a corporation shall be personally liable for any consumers sales and service tax along with any additions, penalties, and interest thereon owed by the corporation.

*Id.,* 193 W.Va. at 691, 458 S.E.2d at 784.

■ *Haden v. Calco Awning* and *Frymier–Halloran* thus stand for the proposition that the Legislature can constitutionally impose liability for unpaid sales taxes on corporate officers; and that a successful due process-based constitutional challenge to such imposition in an individual case requires a showing by clear and convincing evidence that the imposition of liability would be arbitrary and capricious and unreasonable to such a degree as to constitute a violation of constitutional due process.

A number of jurisdictions have statutes that, like *W.Va.Code,* 11–15–17 (1978), authorize the collection of unremitted consumer sales taxes from corporate officers.[4] Howev-

---

**3.** This Court has recognized that the Legislature may require a corporate officer to be personally liable for certain unpaid obligations of the corporation if the officer "knowingly permits" or "allow[s] with personal information or allow[s] by virtue of a position in which the person should have known[ ]" the obligation not to be paid. *McDaniel v. W. Va. Division of Labor,* 214 W.Va. 719, 725 n. 10, 591 S.E.2d 277, 283 n. 10 (2003), *quoting Mullins v. Venable,* 171 W.Va. 92, 95 n. 2, 297 S.E.2d 866, 870 n. 2 (1982) (both cases involving unpaid wages). *See also Britner v. Medical Security Card, Inc.,* 200 W.Va. 352, 356, 489 S.E.2d 734, 738 (1997) (it was no defense to personal liability for a company officer to claim that workers were not paid "because the company did not have funds to make the payments.") *Cf. Bowling v. Ansted Chrysler–Plymouth–Dodge, Inc.,* 188 W.Va. 468, 425 S.E.2d 144 (1992) (corporate officers liable if they approved or sanctioned wrongful corporate action). *See also State ex rel. Van Nguyen v. Berger,* 199 W.Va. 71, 75–

76, 483 S.E.2d 71, 75–76 (1997) (*Mullins v. Venable* principles that "corporate officers have a duty to see that their corporation obeys the law," and "corporate officers may not hide behind the corporate skirt to escape liability for their unlawful mischief," remain very persuasive).

**4.** 68 *Am.Jur.2d Sales & Use Taxes,* Sec. 243 (November 2007) states:

> In some jurisdictions, personal liability for a corporation's unpaid sales or use taxes may be imposed upon a corporate officer or employee, which may also include penalties or interest due on the tax. For personal liability to be imposed, the officer or employee must have a duty or be responsible for filing the corporation's sales or use tax return or payment of such taxes under some statutes, although such a duty may include an officer or employee playing an active role in the corporation's overall management, or having authority to

er, our research indicates that *W.Va.Code*, 11–15–17 [1978] (and associated regulations) may be unique in that, unlike other jurisdictions, West Virginia law and regulations give no policy-based or due process-based guidance or standards for deciding when officer liability may or may not be imposed in a given case—without running the risk of being arbitrary and capricious or unreasonable, or without exceeding the bounds of due process and fundamental fairness. (*See Marcus v. Holley*, 217 W.Va. 508, 527, 618 S.E.2d 517, 536 (2005) ("[a] due process analysis is founded upon the concept of fundamental fairness"). In the absence of such legislative guidance, we shall review cases from other jurisdictions interpreting and applying such "personal liability" statutes and standards.

In *State Board of Equalization v. Wirick*, 93 Cal.App.4th 411, 112 Cal.Rptr.2d 919 (2001), the applicable statute stated that a corporate officer who had "control or supervision of, or who is [or was] charged with the responsibility for the filing of returns or the payment of tax, or who is [or was] under a duty to act for the corporation ... shall be personally liable for any unpaid taxes and interest and penalties on those taxes, if the officer ... wilfully fails to pay or cause to be paid any taxes due from the corporation ..." 93 Cal.App.4th at 417, 112 Cal.Rptr.2d at 923.[5] The California court held that the statute was properly applied to impose personal liability on an officer for unpaid taxes that had not been paid by the corporation—at the same time the corporation had paid other creditors millions of dollars. *Id.* at 418, 112 Cal.Rptr.2d at 924.

In *Rock v. Dept. of Taxes*, 170 Vt. 1, 742 A.2d 1211 (1999), the court noted that taxes like sales taxes are "commonly termed 'trust taxes' because the business withholds or collects the taxes on behalf of the state from a third party and holds them in trust until remittance to the state is due." *Id.* at 3, 742 A.2d at 1213. Applying a statute that imposed personal liability for unremitted use taxes on corporate officers who have a duty to collect and remit the taxes, after a lengthy discussion of related state and federal cases and statutes, the court concluded:

> As for appellant's contention, however, that the Department inferred he had a duty to remit the trust taxes at issue from the mere fact of his status as president of the corporation, a quick review of the record and the Department's findings demonstrates to the contrary that they are replete with factors establishing appellant's authority and control over the corporation's finances and his frequent exercise of that authority and control. By adopting the three-part inquiry set forth above (position of person in corporation, person's authority as established in bylaws or contract, and person's actual exercise of control over finances), with specific federal factors having potential but not automatic relevancy, we deliberately place the focus of the inquiry on substance over form-a focus that while professed at the federal level is lost in much of the case law.

*Id.* at 8, 742 A.2d at 1218.

In *Vogel v. New York State Dept. of Taxation & Finance*, 98 Misc.2d 222, 413 N.Y.S.2d 862 (1979), the court held that a "silent" corporate officer who played no active role in corporate affairs and had no knowledge of unpaid taxes was not personally liable for unpaid sales taxes. In contrast, in *Skaperdas, et al. v. Director, Division of Taxation*, 14 N.J.Tax 103, 113 (1994) the court held that corporate officers who had (or should have had) knowledge of unpaid sales taxes, and who played an active role in the affairs of the corporation, were personally liable for unpaid

exercise control or supervision over tax return and tax payment activities, without having actual financial control. On other hand, an officer or director or employee who has little or no supervision or control over such activities may be relieved from liability where circumstances warrant such relief. Some schemes also impose personal liability on an individual who is not a corporate officer, director, or employee, but nevertheless has supervision or control over a corporation's reporting or pay-

ment of sales or use taxes due. A willful failure to file such returns or remit such taxes may also be required before personal liability is imposed. (footnotes omitted).

5. Brackets in original. The California statute only applied after corporate dissolution, apparently because there was bonding to guarantee payment of such taxes during the life of the corporation. *Id.* at 418, 112 Cal.Rptr.2d at 924.

taxes (the court stated, "... I can find no case which stands for the proposition that if another individual is also responsible [for remitting sales taxes collected by the corporation], or perhaps has greater responsibility, the lesser involved individuals are absolved of all liability.") *Compare Cooperstein v. State Division of Taxation,* 13 N.J.Tax 68 (1993), (corporate officer who played no role in corporation's business not liable for unremitted sales taxes).[6]

In *Copeland v. Robinson,* 25 Kan.App.2d 717, 970 P.2d 69 (1998), where personal liability for unpaid taxes was statutorily linked to control or responsibility for preparing tax returns and payment of taxes, the court held that a person charged with such personal liability had a due process right to an opportunity to prove that no such control or responsibility existed.

In *DeLassus v. Tracy,* 70 Ohio St.3d 218, 218, 638 N.E.2d 528, 529–30 (1994), the court held that the fact that a corporate officer "was required to obtain the permission of [another person] for payment of any corporate obligation by check" did not relieve the officer from personal liability for unremitted sales tax collections. *See also Spithogianis v. Limbach,* 53 Ohio St.3d 55, 559 N.E.2d 449 (1990) (delegation of check-signing duty was

not a defense). And in *Cardellino v. Comptroller of the Treasury,* 68 Md.App. 332, 511 A.2d 573 (1986), the secretary-treasurer of the corporation who served as bookkeeper for the business was held personally liable for a corporation's unpaid retail sales taxes.

In *Igel v. Comm'r of Revenue,* 566 N.W.2d 706 (Minn.1997) the court stated:

This court reviews findings of fact of the tax court to determine whether there was sufficient evidence to support the tax court's decision. *Benoit v. Commissioner of Revenue,* 453 N.W.2d 336, 339 (Minn. 1990). Conclusions of law, including interpretations of statutes are, however, subject to de novo review.

When a corporation collects sales tax from third parties, the corporation does so under an obligation to hold the tax in trust for and to pay it over to the state of Minnesota. When sales tax goes unpaid by the corporation, personal liability may be imposed on certain parties involved in the corporation.... We conclude that in the instant case, when imposition of liability on a corporate officer for a sales tax deficiency is at issue, the *Benoit* factors can likewise be used to govern our analysis ...:

The federal cases interpreting the personal liability provisions at 26 U.S.C.A. § 6671 appear to be consistent with the New York cases in the imposition of personal liability on corporate officers. Although liability is based on a balancing of the factors previously mentioned, there appears, however, to be an emphasis placed on the degree of influence and control which an officer exercised in the affairs of the corporation. Specifically, the federal courts focus on the nature and extent of the active participation of the corporate officer in: (1) the financial affairs of the corporation, (2) the decisions concerning the priority of payment to creditors, and (3) the derivation of some personal benefit from the corporation's failure to pay taxes. *See In re Premo, supra,* 116 B.R. [a]t [515] 525–30 [ (Bankr.E.D.Mich.1990) ] for a comprehensive review and analysis of the federal decisions. The personal liability concept, as revealed by the federal decisions, is not to penalize a corporate officer solely because he or she is an officer, but to reach the party or parties actually responsible for the corporation's failure to pay the tax.
(Footnote omitted.)

---

**6.** In *Cooperstein,* the court said:

From all of these New York cases, several principles can be gleaned. First, the holding of corporate office does not, in and of itself, permit the imposition of personal liability upon the office holder for unpaid taxes of a corporation. Second, the determination of whether a duty to act on behalf of the corporation exists depends upon the balancing of a number of factors. These factors include, but are not limited to:

    1. The contents of the corporate by-laws.

    2. One's status as an officer and/or stockholder.

    3. Authority to sign checks and actual exercise of this authority.

    4. Authority to hire and fire employees and actual exercise of this authority.

    5. Responsibility to prepare and/or sign tax returns.

    6. Day-to-day involvement in business or responsibility for management.

    7. Power to control payment of corporate creditors and taxes.

    8. Knowledge of the failure to remit taxes when due.

    9. Derivation of substantial income or benefits from the corporation.

(1) The identity of the officers, directors and stockholders of the corporation and their duties; (2) The ability to sign checks on behalf of the corporation; (3) The identity of the individuals who hired and fired employees; (4) The identity of the individuals who were in control of the financial affairs of the corporation; and (5) The identity of those who had an entrepreneurial stake in the corporation.

As a corporate officer of the Company, Igel was a "person" within the meaning of the personal liability statute. The question is whether he had "control of, supervision of, or responsibility for" the payment of taxes. Before the tax court, Igel conceded that he satisfied all of the *Benoit* factors. He admitted he had been an officer and shareholder since the Company's inception; that he had check signing authority; that he took part in hiring and firing employees; that he signed financial and other documents on behalf of the Company; that he was involved in meetings to discuss how creditors would be paid; and that he had an entrepreneurial stake in the Company. He argued, nevertheless, that he should not be held personally liable for the unpaid sales tax because he did not know that the sales tax was unpaid until after he left the company and he no longer had check signing authority at that time. The tax court rejected the argument, concluding that it was irrelevant that the unpaid tax was discovered after Igel left the company.

On appeal before this court, Igel makes two arguments. First, without conceding that the *Benoit* factors are satisfied, he contends he ought not be liable because he did not "fail" to pay the sales tax, as required to impose personal liability....

Igel's first argument, that he did not fail to pay the tax, is premised on the contention that the statute which imposes personal liability on a "person," ... ambiguous in that the meaning of "fail to pay" is unclear. According to Igel, the legislature could not have intended a person who acts prudently to be held liable for unpaid tax. For a person to "fail to pay" tax, Igel contends, the person's behavior must be negligent; it must fall below some "prudent business-

person" standard. And, he argues, because he acted as a prudent businessperson in setting the tax payment as the highest priority, ensuring funds were available to pay the tax, and employing and relying upon Reese to handle tax matters, he should not be held liable.

Igel's contention that the statute is ambiguous has no merit. The statute is clear on its face-when tax owed by a business entity is not paid, a person, ... becomes personally liable for that unpaid tax. Neither the statute, nor the dictionary, nor common sense dictate the inclusion of a "best efforts" defense for failure to pay tax. Section 270.101 imposes a duty on certain persons to ensure that a company's taxes are paid. When taxes are not paid, such persons are liable for the delinquency.

To further bolster his argument that he did not "fail to pay," Igel points to the provision in federal law that imposes liability for unpaid taxes only when a responsible person "willfully" fails to collect and pay over taxes ... He argues that because federal law sometimes is used to interpret this state's tax statutes, this court ought to impose the federal "willfulness" standard on the sales tax scheme detailed in section 270.101. Igel ignores the absence of a "willfulness" requirement in the state statute and essentially asks this court to insert words into an otherwise unambiguous statute, something we are loath to do. We decline to take up Igel's suggestion that we insert into the tax scheme for personal liability additional requirements not suggested, much less required, by the plain language of the statute.

Igel's second argument is, likewise, unpersuasive. He argues, much as he did in the tax court, that to be held personally liable, he must be shown to have control, supervision or responsibility for tax matters at the time the sales tax goes unpaid and at the time the discrepancy is discovered. Because Igel had "absolutely no control at the time the deficiency was discovered," he argues that the *Benoit* factors are not satisfied and he is, therefore, not personally liable.

We disagree. Liability for trust fund taxes, including sales tax, arises at the time the tax is collected. *See Olsen v. United States*, 952 F.2d 236, 238 (8th Cir. 1991) (noting that liability for federal employment tax withholdings coincides with collection of funds and not the date the employer is required to pay them over to the government). Thus, the critical time frame for determination of personal liability ... is the time of collection. This is the point at which Igel became a trustee of the sales tax funds. He had a continuing obligation to turn over those funds to the state-his duty did not cease when he left the Company. A rule such as the one suggested by Igel would lead to absurd results. Under Igel's framework, in which liability may be imposed only if the person was in control of or had responsibility for taxes both at time of the deficiency and at the time of the deficiency's discovery, an employer could conceivably embezzle sales tax funds due to the state of Minnesota and avoid tax liability by leaving the company before anyone discovered the theft.

In sum, we are unpersuaded by Igel's arguments and conclude that he is a "person" ... who failed to pay tax and is therefore personally liable for the Company's unpaid sales tax for the periods ending January 31, 1994 and February 28, 1994....

566 N.W.2d at 708–10 (some internal citations omitted). *See also Carlson v. Comm'r of Revenue*, 517 N.W.2d 48, 52 (Minn.1994) ("a corporate officer cannot escape personal liability [for unpaid withholding taxes] by contracting to breach the statutorily imposed duty.").

In sum, from the foregoing review of case law we can see that there is a variety of statutory language in a number of jurisdictions specifying whether, when, and upon whom personal liability for a corporation's unpaid sales taxes may be imposed. Most of this statutory language has the decision ultimately resting on whether a person was to some degree "responsible" for the taxes being paid, or had a "duty" regarding the payment of the taxes, or, in some instances, whether the failure to pay the taxes was "willful." The case law that we have reviewed usually involves the proper interpretation and application of these statutory terms, and the factors to be considered in doing so; and courts have come up with a wide range of factors to be considered, selecting those factors in light of the specific statutory language in question, and rarely having any one factor be determinative.

We now turn to the somewhat sketchy but essentially undisputed facts of the instant case. Mr. Schmehl was associated with Filly's bar and restaurant operation in Ranson, West Virginia from its inception. He was made a corporate officer (secretary) when the corporation was formed in 1999, and remained its secretary, it appears, until at least 2005.[7] (In 2005 Mr. Schmehl testified at an administrative hearing before a Tax Department ALJ in connection with the instant case, stating *inter alia* that he became an officer of Filly's because West Virginia liquor laws require a West Virginia resident as a corporate officer; it appears that the other corporate officers may not have been West Virginia residents.) Mr. Schmehl apparently had responsibility for maintaining Filly's corporate records (such as they were), including minutes of corporate meetings, etc.

Mr. Schmehl testified that beginning in 1999 he worked as a bartender at Filly's, for about a year and a half. At some point, Mr. Schmehl also began doing the bookkeeping for the business, and he continued to do the bookkeeping after he stopped working as a

---

7. The transcript of the hearing in the instant case in which Mr. Schmehl testified suggests, on balance, that he did not own stock in Filly's—although one of his recorded answers suggests that he did own stock. The lower court referred to Mr. Schmehl's inconsistent recorded answers about stock ownership as a factor in upholding the Tax Commissioner. On appeal, Mr. Schmehl vigorously denies owning any stock in Filly's. While stock ownership in a corporation might arguably be a factor in some instances in looking at whether a corporate officer can be personally liable for unpaid taxes, the circuit court's ruling does not turn solely on that issue, and this Court may in any event affirm the circuit court on any proper basis, whether relied upon by the circuit court or not. We do not further address the stock ownership issue, deeming it immaterial to our ruling.

bartender. Mr. Schmehl testified that several months after he began doing bookkeeping, his status switched from "employee" to "independent contractor." (The record does not further explain this change of employment status, or suggest that the status change coincided with any actual change of duties.) During the 1999–2002 period, Mr. Schmehl performed all of the bookkeeping services for the corporation; in 2002, he had a heart attack and was "off for about a year." He returned to service as a bookkeeper in 2003.

Mr. Schmehl's bookkeeping work included taking sales information from a computerized cash register and computing the amount of sales tax that had been collected from customers. He testified: "As often as I could, I'd write a check [for the tax] and send it to the State." On those occasions when Mr. Schmehl did not do the bookkeeping (when he was ill or had "quit" for a period of time), he testified that the bookkeeping was done by Filly's president, Paul Horn, or by Filly's vice-president, Angie Frailey. Mr. Schmehl testified that when he was working for Filly's as a bookkeeper, he was the primary person responsible for preparing sales tax returns and making sure the taxes were paid. He also testified that Mr. Horn had to "approve" of such payments, and that on occasion Mr. Schmehl had "quit" for a period of time because of problems like "not being able to take care of things that needed to be taken care of, [like the sales tax]". Mr. Schmehl testified that he was generally aware that Filly's was collecting sales tax from customers and not remitting that tax money to the State.

Mr. Schmehl concedes that imposing personal liability on him for the unpaid sales taxes is facially authorized by *W. Va.Code*, 11–15–17 [1978].[8] He argues, however, that this statute must be constitutionally applied to him, and properly cites to *Haden v. Calco Awning, supra,* for the proposition that such imposition must not be arbitrary and capricious or unreasonable. The Tax Department

and circuit court, applying this standard, found that in Mr. Schmehl's case imposing such liability was not arbitrary or capricious or unreasonable.

The foregoing discussion of case law from other jurisdictions has shown that legislative and taxing bodies in different jurisdictions have used different but in many ways similar terms to delineate what sort of connection a corporate officer must have with a business to be liable for unpaid sales taxes, and courts have fleshed out that language by identifying a wide range of factors to be considered in applying that language.

However, as noted, in West Virginia we have no statutory language giving guidance as to when imposing personal liability is unreasonable, or to test when imposing such liability would be arbitrary and capricious— not even the semi-tautological words "duty" or "responsible." We are aware of no case from another jurisdiction in which the standards to be applied, and the determination as to whether the application of those standards is arbitrary and capricious or unreasonable, is entirely derived from constitutional principles.

Of course, such policy- and fairness-based standard-setting, as long as the standards fall within constitutional limits, is in the first instance more properly a task for the Legislative and Executive branches rather than for this Court—should those branches of government choose to take on that task. However, in the absence of such a delineation, this Court can and should look to other jurisdictions that have policy-based and "fundamental fairness" due process-based standards for the imposition of personal liability for such unpaid taxes, as expressed in their statutes and interpreted and applied by their courts, to see if those jurisdictions' choice of statutory language, or the delineation of particular factors to be considered in applying those jurisdictions' standards, should be adopted by this Court.

---

**8.** Mr. Schmehl also argues that *W.Va.Code*, 11–15–17 (1978) should be "liberally construed" in his favor. But Mr. Schmehl points to no specific statutory language that needs to be construed one way or another. The statute clearly imposes liability on Mr. Schmehl. Mr. Schmehl also argues that he did not prepare tax returns, sign checks, etc. as an officer, but as an employee or contractor. We are aware of no case or statute that suggests that such a purported distinction exists or has significance in a personal tax liability case.

Upon such review, as contained in the foregoing discussion, we conclude that a choice of a particular term to describe a corporate officer's connection with the payment of sales taxes—like "duty," or "wilfulness," or "responsibility"—is not constitutionally compelled. Rather, we conclude that the "arbitrary and capricious or unreasonable" standard for imposing personal liability that this Court set forth in *Haden v. Calco Awning, supra* is as good as any other. This standard has the benefit of permitting reference to relevant case law from all of the jurisdictions that have decided cases in this area, does not unnecessarily invade the province of other branches of government, and is consistent with the principle of *stare decisis.*

■ Based on all of the foregoing, we hold that under the due process protections of the *West Virginia Constitution,* Article III, Section 10, in the absence of statutory or regulatory language setting forth standards for the imposition of personal liability for unpaid and unremitted sales taxes on individual corporate officers pursuant to *W. Va.Code,* 11–15–17 [1978], such liability may be imposed only when such imposition is in an individual case not arbitrary and capricious or unreasonable, and such imposition is subject to a fundamental fairness test. The burden is on the person seeking to avoid such liability to show with clear and convincing evidence, giving due deference to the statute's general authorization for the imposition of such liability, that it would be fundamentally unfair and an arbitrary and capricious or unreasonable act to impose such liability.

■ In applying this test in the instant case, we observe that Mr. Schmehl was not a "silent" corporate officer (*Vogel, supra*), but was directly involved with the business on a daily basis. He did not deny that he received a significant financial benefit from the Filly's business. It is not unfair, in fact, to make the assumption that Mr. Schmehl was paid for his bookkeeping services (along with

other employees and creditors of Filly's) at least in part with the tax money that was paid by Filly's customers—and held in trust by Filly's to be remitted to the State. Furthermore, Mr. Schmehl would have known that fact better than almost anyone—because he was a person with a direct responsibility for computing and sending in the taxes.

■ Additionally, Mr. Schmehl's self-serving assertion that the ultimate authority for approval of sending taxes to the State lay with the business's owner, Mr. Horn, does not relieve Mr. Schmehl from his own independent responsibility to follow the law. (*Skaperdas, DeLassus, supra*). Knowing that the law was not being complied with, Mr. Schmehl did not resign or report the wrongdoing. And while Mr. Schmehl was apparently not actively involved in Filly's business affairs during a portion of the time when taxes were not being remitted, when he returned to the business he resumed the practice of not remitting sales taxes.

Under every standard and case that this Court has identified, Mr. Schmehl has not demonstrated with clear and convincing evidence that it is fundamentally unfair or arbitrary and capricious or unreasonable for the provisions of *W.Va.Code,* 11–15–17 [1978] to be applied to him to impose personal liability for the unpaid taxes at issue.[9] On this issue, the judgment of the Circuit Court of Jefferson County is affirmed.

### B.

#### *Statute of Limitations*

The second issue is whether the statute of limitations bars the Tax Department from recovering unpaid taxes from Mr. Schmehl. Again, we proceed by first identifying the applicable legal principles, and then applying those principles to the facts of the instant case.

The general statute of limitations for assessing the amount of unpaid taxes, *W. Va.*

---

9. Corporations sometimes purchase Errors & Omissions ("E & O") or similar liability insurance policies that defend and indemnify corporate officers for personal liabilities they may incur in their corporate role. Laws regarding businesses that sell alcohol often require a bond

of some sort for personnel. If insurance or bonding covered Mr. Schmehl in the instant case, it may be that only by legally establishing his personal liability could the proceeds thereof become available.

*Code*, 11–10–15(a), [2006] states in pertinent part:[10]

> General rule.—The *amount* of any tax, additions to tax, penalties and interest imposed by this article or any of the other articles of this chapter to which this article is applicable *shall be assessed within three years* after the date the return was filed (whether or not such return was filed on or after the date prescribed for filing): Provided, That in the case of a false or fraudulent return filed with the intent to evade tax, or in case no return was filed, the assessment may be made at any time.

(Emphasis added.)

As previously noted, *W.Va.Code*, 11–15–17 [1978] states:

> If the taxpayer is an association or corporation, the officers thereof shall be personally liable, jointly and severally, for any default on the part of the association or corporation, and *payment* of the tax and any additions to tax, penalties and interest thereon imposed by article ten of this chapter may be *enforced* against them as against the association or corporation which they represent.

(Emphasis added).

Finally, *W.Va.C.S.R.* § 110–15–4a.7.1 [1993] states, in pertinent part:

> An assessment against officers is considered to be a proceeding for the collection of the tax liability of the corporation or association. If the liability of the corporation or association is determined to be due by an assessment which has become final, as assessment against an officer must be made within *five years* after the assessment against the corporation or association has become final.

(Emphasis added.)

In the instant case, the Tax Commissioner first assessed Filly's for the amount of its unpaid sales taxes (plus interest and penalties) in December of 2000; that amount was not paid, and the assessment became final. In November of 2004, the Tax Commissioner issued a Notice of Assessment against the petitioner as an officer of the corporation. Mr. Schmehl concedes that if the five-year statute of limitations for collection actions against corporate officers set forth in *W.Va. C.S.R.* § 110–15–4a.7.1 [1993] applies to the collection action against him, the Tax Commissioner acted within the applicable period.

Mr. Schmehl argues, however, that because *W.Va.Code*, 11–15–17 [1978] states that "payment … may be enforced against [corporate officers] *as against the association or corporation they represent* [ ]" (emphasis added), therefore the same three-year statute of limitations in *W. Va.Code*, 11–10–15(a), [2006] for assessing the amount of tax due by a corporation must also apply to a subsequent enforcement action seeking payment of the assessed amount by a corporate officer.

However, the legislative grant of *permission* to collect unremitted sales taxes from corporate officers is not a *mandate* to initiate such collection/enforcement actions under the same three-year time limitation required for the assessment of the amount due against the corporation. The Legislature has rather approved a regulation going directly to this issue, *W.Va.C.S.R.* 110–15–4a.7.1 (1993) stating that such enforcement and collection actions against corporate officers are subject to a five-year statute of limitations.

Mr. Schmehl cites to the 1990 case of *In re Bowen*, 116 B.R. 477 (Bankr.S.D.W.Va.1990). In that case, the bankruptcy judge stated that "[t]he Tax Department cites *no authority* for its position that issuance of a notice of jeopardy assessment [against a corporate officer for personal liability for unpaid taxes] is a collection action …" (emphasis added). The *Bowen* court held that the three-year statute of limitations for the assessment of amounts of unpaid taxes in *W. Va.Code*, 11–10–15 [2002] was controlling.

*In re Bowen* is not persuasive in the instant case, because that opinion was issued two years before the Legislature approved *W. Va.C.S.R.* § 110–15–4a.7.1 [1993], which provides direct authority for the position tak-

---

**10.** We cite to the most recent enactment of this statute as there is no reason to refer to an earlier version.

en by the Tax Department. Mr. Schmehl argues that the regulation contradicts the statute; but as noted above, nothing in the statute mandates that a personal liability *collection/enforcement* action is subject to the same period of limitation as an *assessment* of the underlying amount of taxes owed. Nor would such a position make sense; the Tax Department should have a reasonable time to try to collect unpaid taxes directly from a corporation, before having to consider taking action against officers.

In *United States v. Galletti*, 541 U.S. 114, 124 S.Ct. 1548, 158 L.Ed.2d 279 (2004), the Supreme Court was faced with a scenario similar to the one in the instant case. The Internal Revenue Service assessed a partnership for unpaid employment taxes, within the applicable three-year statute of limitations. Thereafter, the IRS attempted to collect the unpaid taxes from the partners individually by filing a proof of claim in bankruptcy court. The partners argued that in order for the ten-year statute of limitations regarding collections to apply, the IRS must have separately assessed the partners individually within the three-year statute of limitations. The Supreme Court disagreed, stating "[O]nce a tax has been properly assessed, nothing in the *Code* requires the IRS to duplicate its efforts by separately assessing the same tax against individuals or entities who are not the actual taxpayers but are, by reason of state law, liable for payment of the taxpayer's debt." 541 U.S. at 123, 124 S.Ct. at 1554, 158 L.Ed.2d at 289 (2004).

For the foregoing reasons, we hold that the circuit court did not err in finding that the applicable statute of limitations did not bar the collection of the unpaid taxes from Mr. Schmehl.

## IV.

### Conclusion

We emphasize that our decision reaches only a narrow issue—whether it was permissible under the laws and regulations enacted and approved by the Legislature for the Tax Commissioner to seek to recover the unpaid sales taxes from Mr. Schmehl. We have applied the law as the Legislature wrote it and as we have interpreted that law in prior cases—reiterating an important due process protection of fundamental fairness in the absence of relevant legislative provisions, in accord with the historic role of courts in our system of government. *See generally, Calabresi, Guido, A Common Law for the Age of Statutes,* Harvard University Press, 1982.

A corporate officer who can demonstrate that imposing personal liability for unpaid and unremitted sales taxes would be arbitrary, capricious, or unreasonable will find nothing to fear in this Court's ruling in the instant case. The judgment of the Circuit Court of Jefferson County is affirmed.

Affirmed.

Justice ALBRIGHT concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

ALBRIGHT, Justice, concurring, in part, and dissenting, in part.

### (Filed April 4, 2008)

While I concur with the new syllabus point in the majority opinion fixing a clear legal standard for imposing liability for unpaid sales taxes on individual corporate officers, application of that standard to impose tax liability against Appellant under the facts of this case is both unreasonable and fundamentally unfair. The very benchmarks adopted by the majority for determining when a corporate officer can be held personally responsible—"when such imposition is in an individual case not arbitrary and capricious or unreasonable"—are clearly incapable of being met in this case.

The factual circumstances presented in the instant case all but demand a ruling that Mr. Schmehl should not be held personally liable for unpaid corporate sales tax based on both his intermittent employment as a corporate bookkeeper for Filly's of America and the limited financial authority or control he had when serving as the corporate bookkeeper. While clearly downplayed by the majority, Mr. Schmehl offered discerning factual and legal arguments in support of his position that personal imposition of tax liability is indefensible in the case *sub judice.* Among the particulars he identified was the fact that

for an entire year of the period covered by the personal tax assessment levied against him, he was not even working for the company as he was recovering from a heart attack which he suffered in July 2002.[1]

Rather than fully discuss the inconstant pattern of Mr. Schmehl's employment[2] and the numerous bases he offers as to why tax liability should not be imposed, the majority opts to gloss over the critical facts that clearly tip the scales of justice away from imposing personal tax liability in this particular case. A careful, unbiased review of the facts of this case reveals that Mr. Schmehl did in fact have responsibility for both preparing corporate tax returns and for preparing consumer sales and service tax returns, which included remitting the actual tax payments. Admittedly, Mr. Schmehl was one of several persons authorized to sign checks on the corporate bank account. Overlooked by the majority, however, is the fact that when the corporate funds were insufficient to pay all of the outstanding corporate obligations, the exclusive and ultimate authority to determine which obligations would be paid rested not with Appellant, but with the corporation's president and majority stockholder, Paul Horn. In addition to the one-year period in which he did not work for the corporation due to his recovery from a heart attack, Mr. Schmehl states that he did not continually serve as the corporate bookkeeper out of his frustration over not being able to fully execute the duties of his job.

Although the trial court acknowledged Mr. Schmehl's contention that his lack of ultimate authority regarding the disbursement of corporate funds weighed against imposing personal tax liability, the trial court wholly discounted Mr. Schmehl's position, and apparently his credibility, based on a representation made by the State that Mr. Schmehl owned stock in the corporation. In light of the fact that Appellant's stock ownership in Filly's has recently been disestablished, the undue emphasis the trial court placed on this issue in rendering its opinion suggests that the ruling below is untenable:

The Court emphasizes that Petitioner contradicted himself at the Tax Appeal Office's hearing by stating he did own stock in Filly's and then a few minutes later denying he owned stock. Therefore, the Court finds his self-serving testimony that he was only a contract worker and was not in fact an officer suspect. For the same reason the Court finds the Tax Appeal Office's view that Petitioner cannot escape liability by claiming that superiors had the final authority is rational.

Between the time of the trial court's ruling in this matter and this Court's decision in this case, Stephen P. Lee, Executive Director, Clerk of the Court of the West Virginia Office of Tax Appeals, executed an affidavit pertaining to the evidentiary hearing of this matter. That affidavit contains averments that Mr. Lee conducted an independent review of the audio recording of the transcript and that after listening to the recording at least ten times, he came to the following conclusion:

[I]t is perfectly clear that a clerical error by the transcriptionist is set forth in the written transcript as follows. On page 16, line 291, of this hearing transcript, the Petitioner's counsel, Mr. Caryl, is conducting a line of questions toward his witness, the Petitioner Barry Schmehl. The existing written transcript states here: "Do you have any stock in the corporation?" My thorough review of the audio recording discloses that the actual question clearly was: "She have any stock in the corporation?" In context, this question appears to be referring to an Angela Frailly, whom the witness just identified as the vice-president of the corporation.

The significance of this evidentiary conclusion is that the trial court presumed, as its order clearly demonstrates, that when Mr. Schmehl answered "yes" as to Ms. Frailly's stock ownership, he was responding in reference to his ownership of corporate stock, rather than that of the corporation's vice president.

Relegating any discussion of this issue to a footnote, the majority cursorily acknowledges

---

1. Mr. Schmehl states that he did not resume working for Filly's until July 2003.

2. The trial court's order recognized the "on and off" nature of Mr. Schmehl's employment as a bookkeeper for Filly's.

that "[t]he transcript of the hearing in the instant case in which Mr. Schmehl testified suggests, on balance, that he did not own stock in Filly's . . . ." and further recognizes that "[t]he lower court referred to Mr. Schmehl's inconsistent recorded answers about stock ownership as a factor in upholding the Tax Commissioner." Rather than recognize the significance of this conclusion regarding Mr. Schmehl's lack of stock ownership and the effect the stock ownership issue clearly had on the trial court's decision, the majority chose to "deem[ ] it immaterial to our ruling."

From the quoted portion of the trial court's order above, there is no question that the trial court chose to discount the arguments Mr. Schmehl raised on the issue of his lack of final authority to make corporate tax payment-related decisions. The court characterized Mr. Schmehl's testimony as "self serving" and offered the contradictory[3] evidence on the issue of his ownership of stock in Filly's as the sole basis for its opinion that Mr. Schmehl was devoid of credibility. From the record before this Court, we have to presume that if the issue of Mr. Schmehl's lack of stock ownership had been known to the trial court, the issue of Mr. Schmehl's credibility, if not the ultimate decision itself, might have been altered.

The issue of whether Mr. Schmehl was merely a titular office holder[4] and not one with actual managerial authority is significant. The law is clear that corporate title holding alone is not sufficient to impose personal tax liability for unpaid corporate taxes. See State ex. rel Haden v. Calco Awning & Window Corp., 153 W.Va. 524, 170 S.E.2d 362 (1969) (upholding W.Va.Code § 11–15–17 as constitutional as applied against corporate officers who in fact acted as officers of corporation, rejecting claim that election flaws negated imposition of personal tax liability); Admin. Dec. 06–026C, 06–027W, W.Va. Office of Tax Appeals (April 7, 2006) (ruling that

"[e]ffective on and after My 15, 1993, the consumers' sales and service tax legislative regulations follow the broad reach of W.Va. Code § 11–15–17 [1978] by basing corporate officer liability for unpaid corporate consumers' sales and service tax liability upon the corporate officer's *status* as a corporate officer, as long as that officer, during the assessment period(s), had *any actual managerial authority* on behalf of the corporation, that is, he or she was not merely an officer in name only"). Consequently, the argument that Mr. Schmehl raised below as to his lack of decision-making authority as to the tax payments in issue was deserving of more scrutiny than that accorded by either the trial court or the majority.

On balance then, I can only reach the conclusion that the decision to impose personal tax liability against Mr. Schmehl—an individual who held a corporate title but no stock and who did not continuously occupy the position of corporate bookkeeper as one that is arbitrary, capricious, and clearly unreasonable under the facts of this case. Accordingly, I must respectfully dissent from the result reached by the majority.

---

**3.** The trial court viewed the evidence as "contradictory" based on Mr. Schmehl's denial of stock ownership while at the same hearing answering "yes" when responding to a query regarding the stock ownership held by Ms. Frailly, the corporate vice president. As discussed above, the trial court mistakenly thought Mr. Schmehl's answer

of "yes" concerned his personal ownership of corporate stock.

**4.** Mr. Schmehl argued that he was only made a corporate officer in the first instance to meet a residency requirement. His lack of corporate stock seems to confirm this possibility.